# EXHIBIT D



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

William S. Moorhead Federal Building
1000 Liberty Avenue, Room 1112
Pittsburgh, PA  15222
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Pittsburgh Direct Dial:  (412) 588-6905
FAX (412) 395-5749
Website:  www.eeoc.gov

Charge Number: 846-2022-08080

Renee Zinsky

⬛⬛⬛⬛⬛⬛⬛
⬛⬛⬛⬛⬛⬛⬛

                                Charging Party

Globe Life, Inc.
3700 S Stonebridge Drive
McKinney, TX 75070

                                Respondent

## **DETERMINATION**

      Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above-referenced charge of discrimination. All requirements for coverage have been met.

      Charging Party Renee Zinsky ("Charging Party") alleges that Respondent Globe Life, Inc. ("Respondent"), which was referenced in the charge as "Globe Life," subjected her to discrimination because of sex (female) and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Charging Party alleges that Respondent subjected her and other female employees to a hostile work environment because of sex. She alleges that male workers frequently and openly made demeaning and offensive comments about female employees, and she further alleges that supervisors made unwelcomed sexual advances toward female employees, including physical touching of their female subordinates. Charging Party alleges that her supervisor promised her opportunities for advancement if she engaged in sexual acts with him. Charging Party alleges that there were few, if any, human resources options available to report sexual harassment, and when she attempted to make a complaint, Respondent retaliated against her by further harassing and demoting her. Finally, Charging Party alleges that she was constructively discharged due to the harassment and retaliation.

      Respondent denies committing any violations of Title VII. Respondent asserts that Charging Party was not a covered employee of Respondent but rather was an independent contractor, and therefore she was not subject to the protections of Title VII. Respondent alleges that its agents are independent contractors because, among other reasons, they sign agreements stating they are independent contractors and set their own work schedule. Respondent alleges that its agents are part of a union, which maintains a harassment policy and option for reporting harassment. Respondent also maintains a social media policy.

1

Respondent alleges that Charging Party raised concerns about Michael Russin's conduct with Simon Arias directly and requested to be transferred to a different team, which was granted. Respondent alleges that Mr. Russin was given a written warning. Respondent alleges that it received a complaint against Mr. Russin by Charging Party in November 2021. Respondent alleges that it investigated the complaint, which resulted in Respondent terminating its contract with Mr. Russin.

An examination of the evidence in this matter demonstrates the following facts:

As a threshold matter, I find that Respondent was and is a Title VII employer, both individually and jointly along with Arias Organization (also known as "Arias Agency" or "Arias Agencies"), of the Charging Party, all persons holding the titles of Caller, Public Relations Representative, Agent, Supervising Agent, General Agent, Master General Agent, Regional General Agent, and State General Agent; all other persons engaged in Arias Organization's business operations in any capacity, including but not limited to sales of insurance products, support functions, any other related functions, and any supervisors or managers concerning the same; and all other categories of workers who are referenced by, or fall within the scope of, the reasonable cause findings set forth in this Determination.

In addition, the evidence establishes that Arias Organization has acted and presently acts as an agent of Respondent for purposes of recruitment and employment of workers in the aforementioned categories, workers who are, for purposes of Title VII, employees of Respondent. Accordingly, all acts or omissions of Arias Organization related to the unlawful employment practices that are the subject of this Determination are imputed to Respondent for purposes of Title VII liability.

Alternatively, I find that Respondent and Arias Organization constitute a single employer of workers in the aforementioned categories within the meaning of Title VII. Accordingly, all such employees of Arias Organization are considered employees of Respondent for purposes of Title VII liability, and all acts or omissions of Arias Organization related to the unlawful employment practices that are the subject of this Determination are considered Respondent's acts or omissions for purposes of Title VII liability.

Respondent's characterization of its workers as "independent contractors" is inaccurate under controlling law. Though not an exhaustive list of considerations in this matter, the evidence shows that the various indicia of Respondent's authority and control over these workers, both directly and acting through Arias Organization; the nature and location of their work; the nature of Respondent's business and operations; and other, salient factors bearing on the nature of the relationship between Respondent and its workers demonstrate that all of the aforementioned persons were/are employees of Respondent within the meaning of Title VII.

Respondent hired Charging Party on or around April 2019, and she held the positions of Agent and Supervising Agent during her tenure with Respondent. Michael Russin was a management-level employee of Respondent with the authority to take tangible employment actions against employees whom he supervised.

2

Acting through Russin and other male management-level employees and coworkers, Respondent subjected Charging Party to unwelcome harassment because of her sex and retaliation for engaging in protected activity. Examples of Respondent's sex-motivated harassment of Charging Party include but are not limited to nonconsensual sexual touching and conduct, such as groping of intimate body areas; unwelcome displays of male genitalia, acts of male masturbation and pornography; degrading and offensive comments about Charging Party and other female workers; sexist comments about women generally; threatening to withhold promotion unless Charging Party would engage in sexual conduct with him; and threats of violence and related unwelcome touching and physical restraint. Respondent retaliated against Charging Party after she reported the sexual harassment to Arias Organization CEO Simon Arias. Arias made statements in response to her report that were reasonably likely to deter her from making any further efforts to report the harassment or to retain counsel regarding the matter, and Respondent demoted her, or alternatively, constructively demoted her. After her sex harassment complaints and instituting Title VII proceedings, Respondent subjected Charging Party to retaliation in the form of highly disparaging statements and preventing Charging Party from being assigned to new supervisors (e.g., MGA's or RGA's). After Charging Party ceased actively performing work for Respondent because of the sexually hostile work environment and retaliation, it appears that she remained technically employed by Respondent. However, she was unable to return to work due to Respondent's unlawful employment practices.

Respondent also subjected a class of female employees to unwelcome harassment because of their sex. Examples of sex-motivated harassment of female employees include but are not limited to frequent, open, and offensive language used toward and about female employees by male management-level employees and coworkers; male supervisors and other management-level employees offering employment-related benefits to their female subordinates in exchange for acquiescence to sexual demands; and male management-level employees and coworkers engaging in acts of unwelcome physical touching and sexual assault of female employees and subordinates.

Respondent further subjected a class of female employees to unequal terms and conditions of employment because of sex. Examples of this sex-motivated disparate treatment include but are not limited to failing to provide the same amount and quality of training to female employees as was provided to male employees, and assigning sales leads to female employees that were inferior in quantum and type relative to the sales leads assigned to male employees. Respondent also discharged female employees because of their sex and constructively discharged female employees through its failure to prevent and correct a discriminatory and hostile work environment because of sex and other sex discriminatory terms and conditions of employment.

Respondent further subjected a class of employees to retaliation for engaging in protected opposition to Respondent's unlawful employment practices. Examples of retaliation against employees for engaging in protected opposition include but are not limited to withholding sales leads from employees who attempted to report sexual harassment and assault; continued, worsening harassment of employees who attempted to report or did report sexual harassment; and discharge or constructive discharge of employees who engaged in protected activity.

Given the severity of the sexual harassment and assault, the pervasive pattern of harassing conduct against female employees, and the fact that many of the harassment perpetrators were

3

either management-level employees or others whose conduct was condoned by management, among other factors, the harassment was sufficiently severe or pervasive that a reasonable person in like circumstances would regard the work environment as hostile or abusive because of sex, and Charging Party and the class of other female employees subjectively regarded the work environment as such.

The evidence establishes multiple bases for Respondent's liability for its sexually hostile work environment.

Respondent has created, condoned, and actively promoted a work environment that is hostile and abusive to female employees because of their sex. For instance, a number of the participants in the sexual harassment and/or who have knowingly fostered a working environment in which such conduct is considered acceptable were/are of sufficiently high status or authority within the organization that they constitute alter egos or proxies of Respondent, and their actions are therefore automatically imputed to Respondent for purposes of liability.

Additionally, the sexually hostile work environment culminated in Respondent's retaliatory and sex-based demotion and lay-off/discharge, or alternatively, constructive demotion and constructive lay-off/discharge of Charging Party, which are tangible employment actions, and in tangible employment actions against a class of other female workers. Indeed, Charging Party's supervisor and supervisors of other female employees also engaged in *quid pro quo* sexual harassment that culminated in various tangible employment actions regarding Charging Party and a class of female employees.

Moreover, Respondent has not demonstrated that it has taken reasonable preventive and corrective action with regard to sexual harassment perpetrated by both supervisory and non-supervisory male employees despite the information of which it had notice, and the evidence establishes that Respondent has consistently failed to take such action.

For instance, Respondent fails to maintain, distribute, and implement any reasonably diligent sexual harassment policy applicable to its entire workforce. Respondent does not maintain any reasonable avenues for reporting sexual harassment or discrimination or obtaining remedial action regarding such conduct. It has also engaged in conduct reasonably likely to deter, and that has deterred, female employees from making sex harassment and other discrimination complaints, including but not limited to engaging in threats and other retaliatory adverse actions, active discouragement of complaints, failing to act on complaints, refusing to make postings of Title VII rights because doing so is deemed inconsistent with Respondent's workplace "culture," and deliberately misclassifying its employees as independent contractors purportedly lacking protection from the types of unlawful employment practices prohibited by Title VII. Thus, Respondent has failed to take reasonable action to prevent workplace sexual harassment.

Respondent has also failed to exercise reasonable care under the circumstances to correct sexual harassment of which it knew or should have known. In response to Respondent's actual and constructive notice of the existence of a sexually hostile work environment – including Charging Party's and other female employees' numerous complaints of sex harassment and discrimination, as well as Respondent's own observations of sex harassment perpetrated by male management

4

officials and other personnel – Respondent has failed to take prompt, reasonably diligent corrective action to remediate its sexually hostile work environment. In fact, high-level management officials and others against whom multiple reports of sexual harassment and assault have been made have continued to work for Respondent even after such reports and have not been subject to appropriate corrective action. Respondent has persistently failed to remedy individual instances of sexual harassment of which it had notice, and it has also failed to take action to abate a company-wide culture of sexual harassment. This failure to take reasonable corrective action regarding victims of harassment of which Respondent knew or reasonably should have known also constitutes negligent failure to take preventive action concerning subsequent harassment victims whose harm could have been averted by a diligent response to earlier incidents.

Respondent has also failed to demonstrate that Charging Party and the class of female employees acted unreasonably by failing to complain or failing to take actions to avoid harm otherwise. The evidence shows that the actions of Charging Party, as well as the actions of other female employees, to complain and avoid harm were reasonable under the circumstances. The evidence also shows that Respondent did not maintain reasonable remedial avenues that female employees could invoke, and as discussed above, has engaged in conduct reasonably likely to deter, and that has deterred, complaints.

Based on the foregoing, I find that there is reasonable cause to believe that Respondent subjected Charging Party to a hostile work environment, as well as *quid pro quo* harassment, because of sex (female) in violation of Title VII. I further find that there is reasonable cause to believe that Respondent subjected Charging Party to threats and demotion, or alternatively, constructive demotion because of her sex (female) and in retaliation for protected activity (opposition) in violation of Title VII. I further find that there is reasonable cause to believe that Respondent subjected Charging Party to lay-off/discharge, or alternatively, constructive lay-off/discharge because of her sex (female) and in retaliation for protected activity (opposition, participation) in violation of Title VII.

Arising out of the investigation, I further find that there is reasonable cause to believe that since at least January 1, 2011, and continuing to the present, Respondent subjected a class of presently identified and unidentified female employees in all job titles/positions working at all Arias Organization locations nationwide (both in-office and remote) to an ongoing hostile work environment, as well as *quid pro quo* harassment, because of their sex (female) in violation of Title VII.

Arising out of the investigation, I further find that there is reasonable cause to believe that since at least January 1, 2011, and continuing to the present, Respondent subjected a class of presently identified and unidentified female employees in all job titles/positions working at all Arias Organization locations nationwide (both in-office and remote) to denial of equal terms and conditions of employment (access to training, sale leads/assignments) because of their sex (female) and in retaliation for engaging in protected activity (opposition) in violation of Title VII.

Arising out of the investigation, I further find that there is reasonable cause to believe that since at least January 1, 2011, and continuing to the present, Respondent subjected a class of presently identified and unidentified female employees in all job titles/positions working at all

Arias Organization locations nationwide (both in-office and remote) to unlawful discharge because of their sex (female) and in retaliation for engaging in protected activity (opposition) in violation of Title VII.

Arising out of the investigation, I further find that there is reasonable cause to believe that since at least January 1, 2011, and continuing to the present, Respondent subjected a class of presently identified and unidentified female employees in all job titles/positions working at Arias Organization locations nationwide (both in-office and remote) to constructive discharge because of their sex (female) and in retaliation for engaging in protected activity (opposition) in violation of Title VII.

Finally, arising out of the investigation, I further find that the aforementioned sexually hostile work environment, *quid pro quo* sexual harassment, and other unlawful employment practices that Respondent has committed and that are set forth above, whether considered individually or in combination, constitute an ongoing, company-wide pattern-or-practice of discrimination because of sex (female) and retaliation in violation of Title VII that has persisted since at least January 1, 2011.

The Commission makes no findings concerning any other protected bases of discrimination alleged in the Charge.

Upon finding reasonable cause that unlawful employment practices have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. The Commission therefore now invites Respondent to join with it in reaching a just resolution of this matter. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission regulations apply to information obtained during conciliation. Ultimately, any conciliation agreement must be acceptable to the Commission. The Commission representative will contact each party in the near future to begin conciliation.

If Respondent fails to engage in conciliation, or if the Commission determines, in its sole discretion, that conciliation has failed, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On Behalf of the Commission:

September 26, 2024

Date

Deborah A. Kane
Area Director

cc: Anne R. Dana (For Respondent)
Amy Williamson (For Charging Party)