# Exhibit 12

CALIFORNIA DEPARTMENT OF INSURANCE
LEGAL DIVISION
Enforcement Bureau
Jason S. Y. Gatchalian, Bar No. 246084
300 Capitol Mall, 17th Floor
Sacramento, CA  95814
Telephone:  (916) 492-3920
Facsimile:  (916) 324-1883
Email:  Jason.Gatchalian@insurance.ca.gov

Attorney for Complainant
CALIFORNIA DEPARTMENT OF INSURANCE

**BEFORE THE INSURANCE COMMISSIONER**

**OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| In the Matter of the License and Licensing Rights of | File No. SC201900146 |
| CLAUDE LEE PERRY, | **ACCUSATION** |
| a.k.a. CLAUDE L. PERRY, | |
| Respondent. | |

**INTRODUCTION**

The California Department of Insurance ("Department") received an anonymous tip alleging that Respondent, Claude Lee Perry, has been using the personal information of consumers to submit insurance policy applications without their knowledge or consent.  During the course of its investigation, the Department discovered that two separate investigations by different insurers confirmed that Respondent had been using certain personal information of at least 22 different consumers to submit insurance policy applications, without the consumers' knowledge or consent, in order to collect commissions on the fake policies.  The two insurers subsequently terminated Respondent's employment.  Because of Respondent's fraudulent and dishonest behavior, the Department seeks a revocation of Respondent's licenses and licensing rights, pursuant to California Insurance Code sections 1668 and 1738, and an order barring

#1175187.1

1

Respondent from further participation in the insurance industry, in any capacity, pursuant to California Insurance Code section 1748.5.

**JURISDICTION**

1.      This matter arises under the California Insurance Code, Division 1, Part 1, and Part 2, Chapters 1, 2, 5, 7 and 12 and Division 3, Chapters 1 and 2, which governs the licensing of production agencies, including insurance companies, brokers, and agents.

2.      The Department of Insurance is the agency of the State of California responsible for the licensing and monitoring of the insurance industry, including insurance companies, brokers, and agents.

3.      This matter before the Department must be conducted in conformity with the provisions of the California Administrative Procedures Act, California Government Code sections 11500 et. seq.

4.      California Insurance Code sections 1668 and 1668.5 list various grounds upon which the Insurance Commissioner of the State of California ("Commissioner") may deny an application for an insurance license.  California Insurance Code section 1738 provides that the Commissioner may suspend or revoke any permanent license on any grounds upon which he may deny a license application pursuant to California Insurance Code section 1668, in the case of an individual, and pursuant to California Insurance Code section 1668.5, in the case of an organization.

5.      California Insurance Code section 1748.5(b) provides that, "If, after notice and a hearing, the commissioner finds all of the following, the commissioner may issue an order removing a subject person from his or her office or employment with the production agency and prohibiting the subject person from participating in any manner in the conduct of the business of an insurer or production agency, except with the prior consent of the commissioner:

　　　　(1)(A) The subject person has engaged in misconduct with respect to the

　　　　business of insurance that has caused financial or other injury to any

#1175187.1                                                                                      2

person, or

(B) The subject person has engaged in fraud, or willful acts or omissions involving dishonesty that exposed a person to financial or other injury; and

(2) The subject person's conduct or practice demonstrates unfitness to continue as a subject person.

## PARTIES

6.     The California Department of Insurance ("Department"), in its official capacity, brings this Accusation against Respondent, **CLAUDE LEE PERRY**, pursuant to California Insurance Code sections 1668, 1738 and 1748.5.

7.     Respondent was issued insurance license number 0I29771 by the Insurance Commissioner of the State of California ("Commissioner") on April 3, 2013.  Respondent currently is the holder of a resident license to act as an accident and health agent and a life-only agent.

## ALLEGATIONS

8.     On March 29, 2010, the Department received a consumer complaint from a "Julie J" alleging that Respondent was terminated by Mutual of Omaha Insurance Company ("Mutual") because of complaints Mutual received alleging that Respondent had issued policies without the insureds' knowledge.  The email also claims that Respondent used clients' personal information and forged signatures in order to process policies and obtain a commission.

### I.      MUTUAL OF OMAHA INSURANCE COMPANY POLICIES

9.     On or about April 5, 2018, Mutual sent a letter to Respondent requesting information from Respondent regarding 14 separate policies written by Respondent.  Specifically, the letter asked Respondent to explain discrepancies related to some of the applications, provide reasons why some of the policies were cancelled, even though Respondent determined the policy

#1175187.1

3

coverages were suitable, and why others were returned undeliverable.  Lastly, the letter asked how Respondent was able to meet face-to-face with several clients and obtain their electronic signature within minutes of each other, even though the clients' alleged home cities were miles apart.  On or about April 9, 2018, Respondent responded to Mutual's letter, but addressed only two out of the 14 policies in question.

10.     A Producer Performance Summary ("Performance Summary"), received from Mutual, cited issues with policies submitted by Respondent to Mutual.  The Performance Summary found that numerous policies written by Respondent were cancelled due to customer not authorizing the applications or to have premiums deducted from their accounts.  Other policies were returned as undeliverable or clients could not be associated with the listed addresses.

11.     On or about April 20, 2018, Mutual sent a letter to Respondent advising him of his termination for cause due to improper business practices and failure to follow company processes.

**A.     M. C. J.[1]**

12.     M. C. J. submitted a complaint to the Department on or about March 22, 2018.  In her complaint, M. C. J. stated that some of the information in the Mutual policy, such as her address, email and phone number were incorrect.  M. C. J. attempted to contact Respondent regarding signing the application, but Respondent hung-up on M. C. J.

13.     In an investigation conducted by Mutual, Respondent stated that he meet with M. C. J. in Brentwood, California.  However, when contacted by Mutual, M. C. J.'s daughter stated that her mother has never been to Brentwood.

///

///

[1] All identifying and privileged information regarding the insureds referenced in this document have been redacted from this pleading for purposes of publication on the Department's public website, pursuant to the provisions of California Insurance Code section 12938.  Accordingly, the insureds referenced herein are identified in an anonymous manner.  Specific identifying information related to the insureds are provided in Exhibit A, attached hereto and incorporated herein by reference, for the purpose of this pleading only and will not be included for publication on said public website.

#1175187.1

4

**B.    Non-Existent Addresses**

14.    A Department investigator attempted to verify the existence of the home address for the policies of O. C. and J. H. P.  The investigator visited each apartment complex purporting to be the policyholders' home address and determined that neither of the apartment numbers existed at those complexes.

15.    A Department investigator attempted to verify the existence of the home address for E. Q.  The addresses listed for E. Q. was 1987 Sacred Mountain Lane.  The Department investigator could not locate 1987 Sacred Mountain Lane, but located a 1981 Sacred Mountain Lane, a model home for a new development.  The Operations Manager in the sales office stated that the address of 1987 Sacred Mountain Lane was not part of their development.

**C.    R. J.**

16.    A Department investigator visited the address listed on the policy for R. J. According to an employee at the apartment complex's leasing office, while the apartment unit existed, a "R. J." was never a tenant in that unit.

**D.    L. H. C.**

17.    A Department investigator attempted to verify the existence of the home address for the L. H. C.  The investigator visited the apartment complex purporting to be the policyholder's home address and determined that the apartment number did not existed at the complex.

18.    A Department investigator located the son of L. H. C., L. H.C., Jr., who shares the same name as his father.  According to L. H. C. Jr., the information on the Mutual policy was that of his father.  However, the policy listed Antioch, California, as his father's residence.  L. H. C., Jr. stated that his father has lived his whole life in Greenfield, California and never lived in Antioch, California.  L. H. C., Jr. also explained that whenever his father is interested in certain transactions, his father always asks him (L. H. C., Jr.) for assistance since his father does not speak English.  Lastly, L. H. C., Jr. stated that he does not know Respondent.

**E.    I. Z.**

19.    A Department investigator interviewed I. Z.  He stated that he had never met Respondent, requested the policy or ever lived in Brentwood, California, as stated on the policy. Money had been deducted from his bank account to pay for the policy.  I. Z. contacted Mutual, who cancelled the policy, and also reported the situation to his bank.

**F.    M. R. D. J.**

20.    In an interview with a Department investigator, M. R. D. J. stated that she never requested the policy or ever lived in Brentwood, California, as stated on the policy.  The only life insurance policy she applied for was through her union and the agent was named B. L.

**G.    R. M.**

21.    On or about January 3, 2018, Respondent wrote a life insurance application to insure R. M.  R. M. contacted Mutual and stated that she was not aware of this application or policy and the policy contained incorrect information.  While the policy contained R. M.'s correct social security, date of birth and beneficiary information, it stated that she lived in Brentwood, California, but R. M. does not live in Brentwood.  The policy also contained the incorrect email address, phone number and bank account.

**H.    R. Z.**

22.    On or about January 3, 2018, Respondent submitted a life insurance application for R. Z.  R. Z. contacted Mutual to advise premium was being withdrawn from his bank account that he did not authorize.  R. Z. denied signing up for the policy.  He stated that an agent came to his home about a year ago and they completed the paperwork but then changed their minds and did not accept the coverage. He believes the information was used to submit this unauthorized application.

///

///

**I.**    **Monetary Loss to Mutual of Omaha and Respondent's Unearned Commissions**

23.    As a result of Respondent's improper actions, namely the twelve unauthorized policies written by Respondent, Mutual suffered a loss of $1,753.68 in unearned commissions paid to Respondent.

**II.**    **AMERICAN INCOME LIFE INSURANCE COMPANY POLICIES**

24.    During the Department's investigation of Respondent, the Department became aware that Respondent was terminated for cause by American Income Life Insurance Company ("AIL") for reasons similar to Mutual.  Specifically, AIL discovered that Respondent submitted to AIL at least eight insurance policies for customers who never applied for or had knowledge of the policies.  As a result, Respondent was terminated by AIL on or about May 19, 2016.

**A.**    **Respondent's Fraudulent Actions at AIL and Termination from AIL**

25.    A Department investigator interviewed D. F. and D. R. F.  At the time, D. F. was a State General Agent for AIL and has been with AIL for his entire career.  D. R. F. was a Regional General Agent with AIL and D. R. F. stated that she had firsthand knowledge of the "situation" with Respondent.  Both worked at AIL's Concord, California office.

26.    Prior to Respondent's termination with AIL, D. R. F. said that AIL's Concord, California office began receiving calls from existing policyholders complaining about their bank accounts being charged by AIL without their knowledge.  According to both D. F. and D. R. F., they began looking into Respondent's accounts and they discovered Respondent wrote several policies for clients who already had policies with another agent in the same office.  D. R. F. said she believed Respondent obtained the clients' personal information by looking at the files being handled by other agents.  Upon learning this, D. R. F. and D. F. submitted their information to AIL's Corporate office.

27.    A subsequent investigation by AIL discovered at least eight instances where Respondent had submitted insurance applications to AIL whereby the customers did not apply for

#1175187.1

7

said policy nor did they have any knowledge of the coverage. Because of the investigation's findings, AIL terminated Respondent's employment on or about May 19, 2016.

28. Sometime in late 2018, after he had been terminated by AIL, Respondent visited the office of D. F. and D. R. F. While in their office foyer with another agent from Respondent's new company, First Family Life, Respondent tried to persuade other AIL agents to move to Respondent's new company. D. F. and D. R. F. said they asked Respondent to leave the building and have not seen Respondent since.

### B.    F. C.

29. A Department investigator interviewed F. C.'s daughter, L. C., because F. C. was out of the country at the time. L. C. stated that she always assisted her father with insurance transactions and also had access to his bank account. According to L. C., F. C. had an existing policy with AIL. However, F. C. noticed he was being double charged by AIL. F. C. contacted D. F. and D. R. F. (from paragraphs 25 to 28 above) to inquire about the double charge. It was discovered that F. C. had two AIL policies. However, F. C. never applied for one of them. AIL cancelled that unauthorized policy and F. C. was refunded for the premiums deducted from his bank account related to that policy.

### C.    E. Z. and M. Z.

30. E. Z. and M. Z. are husband and wife who had existing policies with AIL. E. Z. noticed that AIL was deducting additional premiums and contacted AIL. According to E. Z., both he and his wife had met with Respondent, but Respondent stated that he was only reviewing their current AIL policies, not writing new ones. E. Z. stated that he and his wife have never lived at the address on the unauthorized applications. E. Z. also said that the phone number on the two applications was wrong. The unauthorized policies were cancelled by AIL and premiums refunded.

///

///

**D.    Monetary Loss to AIL and Respondent's Unearned Commissions**

31.    As a result of Respondent's actions, namely the eight unauthorized policies written by Respondent, AIL suffered a loss of $1,808.80 in unearned commissions paid to Respondent.

**CAUSE FOR DISCIPLINE**

32.    The facts alleged above, in paragraphs 6 through 31, show that it would be against the public interest to permit Respondent to continue transacting insurance in the State of California and constitute grounds for the Commissioner to suspend or revoke Respondent's license and licensing rights, pursuant to California Insurance Code sections 1668(b) and 1738.

33.    The facts alleged above, in paragraphs 6 through 31, show that Respondent has shown a lack of integrity and constitute grounds for the Commissioner to suspend or revoke Respondent's license and licensing rights, pursuant to California Insurance Code sections 1668(e) and 1738.

34.    The facts alleged above, in paragraphs 6 through 31, show that Respondent engaged in a fraudulent act and conducted business in a dishonest manner, and constitute grounds for the Commissioner to suspend or revoke Respondent's license and licensing rights, pursuant to California Insurance Code sections 1668(i) and 1738.

35.    The facts alleged above, in paragraphs 6 through 31, show that Respondent has demonstrated incompetence or untrustworthiness in the conduct of any business or has by commission of a wrongful act or practice in the course of any business exposed the public or those dealing with him to the danger of loss, and constitute grounds for the Commissioner to suspend or revoke Respondent's license and licensing rights, pursuant to California Insurance Code sections 1668(j) and 1738.

36.    The facts alleged above, in paragraphs 6 through 31, show that Respondent has engaged in misconduct with respect to the business of insurance that has caused financial or other injury to a person and his conduct or practice demonstrates unfitness to continue as a subject person, and constitute grounds for removing Respondent from his office or employment with the production agency and prohibiting him from participating in any manner in the conduct of the

business of an insurer or production agency, pursuant to California Insurance Code sections 1748.5(b), 1748.5(b)(1)(A) and 1748.5(b)(2).

37.     The facts alleged above, in paragraphs 6 through 31, show that Respondent has engaged in fraud, or willful acts or omissions involving dishonesty that exposed a person to financial or other injury and his conduct or practice demonstrates unfitness to continue as a subject person, and constitute grounds for removing Respondent from his office or employment with the production agency and prohibiting him from participating in any manner in the conduct of the business of an insurer or production agency, pursuant to California Insurance Code sections 1748.5(b), 1748.5(b)(1)(B) and 1748.5(b)(2).

### PETITION FOR DISCIPLINE

The Department prays for the issuance of an Order that **REVOKES** the license and licensing rights of Respondent, Claude Lee Perry.  The Department also prays for the issuance of an Order that **REMOVES** Respondent from his office or employment and prohibits him from participating in any manner in the conduct of the business of an insurer or production agency, pursuant to California Insurance Code section 1748.5.

Dated:  October 9, 2020                                CALIFORNIA DEPARTMENT OF INSURANCE

By _____
    JASON S. Y. GATCHALIAN
    Senior Attorney

#1175187.1

10