# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |
|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GLOBE LIFE INC. f/k/a TORCHMARK CORPORATION, et al., <br><br> Defendants. | Case No. 4:24-CV-00376-ALM <br><br> Hon. Amos L. Mazzant, III |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Defendants Globe Life Inc. ("Globe Life" or the "Company"), Gary L. Coleman, Larry M. Hutchison, Frank M. Svoboda, M. Shane Henrie, James Matthew Darden, Thomas P. Kalmbach, Steven K. Greer, Jennifer A. Haworth, R. Brian Mitchell, and Joel P. Scarborough (the "Individual Defendants" and collectively with Globe Life, "Defendants") submit this reply in support of their motion to dismiss ("Motion" or "Mot.") (ECF No. 39) and in response to the opposition ("Opposition" or "Opp.") filed by Lead Plaintiffs (ECF No. 46).

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    Plaintiffs' Reliance on Anonymous Sources like Fuzzy Panda Creates a Pleading Issue, not a Fact Issue.................................................................................................................... 3

    II.    The Complaint Does Not Raise a Strong Inference of Scienter......................................... 5

    III.    Plaintiffs Do Not Plead a False or Misleading Statement................................................. 12

    IV.    The Complaint Fails to Plead Loss Causation. ................................................................. 18

    V.    Plaintiffs Have Not Alleged a Scheme Claim.................................................................. 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
   291 F.3d 336 (5th Cir. 2002) ...................................................................................3

*Alaska Elec. Pension Fund v. Asar*,
   768 F. App'x 175 (5th Cir. 2019) .........................................................................2, 10

*Berkeley Lights*, 2024 WL 695699 at *9) ...................................................................17

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) .................................................................................19

*Bond v. Clover Health Invs., Corp.*,
   587 F. Supp. 3d 641 (M.D. Tenn. 2022)....................................................................5

*Brody v. Zix Corp.*
   No. 3:04-CV-1931, 2006 WL 2739352, at *4 (N.D. Tex. Sept. 26, 2006) .............................13

*In re Cassava Scis., Inc. Sec. Litig.*,
   No. 1:21-CV-751, 2023 WL 3442087 (W.D. Tex. May 11, 2023) .........................................4

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
   497 F.3d 546 (5th Cir. 2007) ...............................................................................4, 12

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ..................................................................7, 12

*Crutchfield v. Match Grp., Inc.*,
   529 F. Supp. 3d 570 (N.D. Tex. 2021) ..................................................................10, 17

*Dawes v. Imperial Sugar Co.*,
   975 F. Supp. 2d 666 (S.D. Tex. 2013) ......................................................................11

*Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   620 F. Supp. 3d 603 (S.D. Tex. 2022) ......................................................................11

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008).....................................................................18

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ...................................................................................1

*In re DraftKings Inc. Sec. Litig.*,
   650 F. Supp. 3d 120 (S.D.N.Y. 2023).........................................................................4

*Edgar v. Anadarko Petroleum Corp.*,
  No. 17-1372, 2019 WL 1167786 (S.D. Tex. Mar. 13, 2019) ....................................................5

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) .................................................................................................1

*Handal v. Tenet Fintech Grp. Inc.*,
  No. 21-cv-6461, 2023 WL 6214109 (E.D.N.Y. Sept. 25, 2023) ..............................................5

*Hunt v. BAC Home Loans Servicing, LP*,
  No. C-11-261, 2012 WL 219330 (S.D. Tex. Jan. 24, 2012).....................................................2

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) ....................................................................................4

*Kapps v. Torch Offshore, Inc.*,
  379 F.3d 207 (5th Cir. 2004) ...............................................................................................12

*In re KBR, Inc. Sec. Litig.*,
  No. CV H-17-1375, 2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) ..............................12, 13

*Leacock v. IonQ, Inc.*,
  No. CV DLB-22-1306, 2023 WL 6308045 (D. Md. Sept. 28, 2023).........................................4

*Linenweber v. Southwest Airlines Co.*,
  693 F. Supp. 3d 661 (N.D. Tex. 2023) ...................................................................................18

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
  810 F.3d 951 (5th Cir. 2016) ..............................................................................................4, 9

*In re Lumen Techs., Inc. Sec. Litig.*,
  No. CV 3:23-00286, 2024 WL 4637293 (W.D. La. Sept. 30, 2024).......................................3

*Markman v. Whole Foods Market, Inc.*,
  No. 1:15-CV-681, 2016 WL 10567194 (W.D. Tex. Aug. 19, 2016)......................................14

*Neiman v. Bulmahn*,
  854 F.3d 741 (5th Cir. 2017) .........................................................................................10, 11

*Ng v. Berkeley Lights, Inc*
  No. 21-CV-094797, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024) .........................................17

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)...................................................................................................3

*Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*,
  No. 19-CV-217, 2021 WL 9037758 (W.D. Tex. Sept. 13, 2021)..........................................13

iii

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
58 F.4th 195 (5th Cir. 2023) ..................................................................10

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) ....................................................................3

*Pang v. Levitt*,
No. 1:22-CV-01191, 2023 WL 11643704 (W.D. Tex. Dec. 20, 2023) ....................................8

*Satanic Temple Inc. v. Young*,
681 F. Supp. 3d 685 (S.D. Tex. 2023) ..................................................................6

*Schneider v. Natera, Inc.*,
No. 1:22-CV-398-DAE, 2023 WL 9958265 (W.D. Tex. Sept. 11, 2023)................................4

*SEC v. Verges*,
716 F. Supp. 3d 456 (N.D. Tex. 2024) ..................................................................19

*In re SolarWinds Corp. Sec. Litig.*,
595 F. Supp. 3d 573 (W.D. Tex. 2022)..................................................................6

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
365 F.3d 353 (5th Cir. 2004) ..................................................................5

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) ..................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..................................................................1, 2

*In re Tesla Inc. S'holder Derivative Litig.*,
No. 1:22-CV-00592, 2023 WL 6060349 (W.D. Tex. Sept. 15, 2023) ....................................14

*In re Toronto-Dominion Bank Sec. Litig.*,
No. CV 17-1665, 2018 WL 6381882 (D.N.J. Dec. 6, 2018) ..................................................7

*In re VeriFone Holdings, Inc. Securities Litigation*,
704 F.3d 694 (9th Cir. 2012) ..................................................................8

*Willow Innovations, Inc. v. Chiaro Tech., Ltd.*,
No. 2:23-CV-00229-JRG, 2024 WL 4043451 (E.D. Tex. Sept. 4, 2024) ................................2

*Yoshikawa v. Exxon Mobil Corp.*,
No. 3:21-CV-00194, 2022 U.S. Dist. LEXIS 178454 (N.D. Tex. Sep. 29, 2022) ..................................................................17

*Yoshikawa v. Exxon Mobil Corp.*,
No. 3:21-CV-00194, 2023 WL 5489054 (N.D. Tex. Aug. 24, 2023) ....................................20

iv

**Statutes**

Private Securities Litigation Reform Act....................................................................................1, 3

SOX Section 302..........................................................................................................................18

SOX Section 404(a) .....................................................................................................................18

**Other Authorities**

Rule 9(b) .........................................................................................................................................1

Rule 10b-5(a) and (c) ...................................................................................................................19

Rule 10b-5(b) ...........................................................................................................................19, 20

**INTRODUCTION**

The Complaint does not satisfy the heightened pleading standards for the elements of falsity and scienter under the Private Securities Litigation Reform Act ("PSLRA").  Plaintiffs merely parrot the implausible and factually deficient allegations of a biased short seller, Fuzzy Panda; rely on inadequately-pled confidential witness allegations; lift allegations from lawsuits that have been dismissed; cite government inquiries that have not led to allegations of wrongdoing; and identify a handful of consumer complaints against a company with millions of customers.  The PSLRA requires more than recitation of allegations from unverified third-party sources.

The Opposition also fails to provide a credible argument that the Complaint raises a strong inference of scienter.  The Complaint offers the typical generic motives, such as stock sales and executive compensation, that federal courts routinely reject because they apply to nearly every executive of a publicly traded company.  And a few anonymous witness allegations (titles and employment dates unknown) that some independent agents acted inappropriately does not support a strong inference of widespread misconduct, much less that executives knowingly condoned it.

The Complaint is defective, and the Court should grant Defendants' Motion to Dismiss.

**LEGAL STANDARD**

Plaintiffs' securities fraud claims are subject to the heightened pleading standards of the PSLRA and Rule 9(b), which require Plaintiffs to allege fraud with particularity.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320-21 (2007).  In evaluating Defendants' motion, the Court can consider documents incorporated into the Complaint by reference and matters of which the Court may take judicial notice.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).  Consideration of these matters in a PSLRA case is entirely normal and does not improperly raise a fact issue.  *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286

1

(5th Cir. 2006).  To the contrary—the Court "must consider plausible, nonculpable explanations for the defendant's conduct" when evaluating Plaintiffs' allegations.  *Tellabs*, 551 U.S. at 324.

The Opposition asserts that Defendants' citation to documents referenced in the Complaint and matters subject to judicial notice create an impermissible "counter-narrative."  Opp. at 8.  But most of the exhibits to Defendants' Motion are documents referenced in the Complaint and are central to Plaintiffs' securities fraud claims because they contain statements that Plaintiffs allege to be false or misleading.  *See* ECF No. 39-1; ECF No. 39-2.  This includes, for example, Globe Life SEC filings and transcripts of earnings calls cited in the Complaint, which are indisputably incorporated by reference and part of the pleadings.[1]

Plaintiffs' objection to the charts in Exhibits 14-16 fails because the charts compile information on sales of Globe Life stock as reported on SEC Form 4 filings—documents that Plaintiffs must have relied on to calculate the Individual Defendants' stock sales.  *See* ¶¶ 277-284. Plaintiffs cannot now raise a question about the accuracy of the data in the Form 4 filings.  *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181 (5th Cir. 2019) (affirming judicial notice of Form 4s because "they were the only possible source of the stock sales data in the TAC").

Finally, Plaintiffs object to a chart compiling data on policy lapse rates as published on Globe Life's website.  Opp. at 9.  Plaintiffs allege that Globe Life sold fraudulent policies to customers who would "cancel the policies or let them lapse." ¶ 91.  The lapse rates are published on Globe Life's website along with other information relied on in the Complaint.  *See* ¶ 188 ("In

---

[1] *See Willow Innovations, Inc. v. Chiaro Tech., Ltd.*, No. 2:23-CV-00229-JRG, 2024 WL 4043451, at *1 (E.D. Tex. Sept. 4, 2024) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)) ("[D]ocuments attached to a defendant's motion to dismiss are considered a part of the pleadings if they are referred to in the complaint and are central to the claim."); *Hunt v. BAC Home Loans Servicing, LP*, No. C-11-261, 2012 WL 219330, at *3 (S.D. Tex. Jan. 24, 2012) (citing *Collins*, 224 F.3d at 498-99) (accepting as true "facts revealed by documents referenced in, and thereby incorporated into, the Complaint").

its Code of Conduct, which is published on … Globe Life's website ….").  The Court can therefore consider the lapse rate information.  *See In re Lumen Techs., Inc. Sec. Litig.*, No. CV 3:23-00286, 2024 WL 4637293, at *23 (W.D. La. Sept. 30, 2024) (considering information published on the defendant company's website because it was similar to materials cited in the complaint).

**ARGUMENT**

I.    **Plaintiffs' Reliance on Anonymous Sources like Fuzzy Panda Creates a Pleading Issue, not a Fact Issue.**

Plaintiffs have outsourced their pleading obligations by repeating the Fuzzy Panda report's allegations without providing any detail on or corroboration for the anonymous sources cited in the report or conducting an independent investigation, which is insufficient to meet the heightened pleading standard of the PSLRA.  *See* Mot. at 10-13.  Plaintiffs claim that Defendants ask the Court to reject the Fuzzy Panda report as "inherently unreliable simply because it was written by a short seller."  Opp. at 10.  Plaintiffs mischaracterize Defendants' argument.  Plaintiffs' reliance on the Fuzzy Panda report fails because the Complaint does not satisfy the requirements for reliance on anonymous sources—short seller or not.  That is a pleading issue, not a fact issue.

Both Fuzzy Panda and the sources cited in its report are anonymous.  To rely on those sources, the Complaint must satisfy the Fifth Circuit's standard for reliance on confidential witnesses: "In cases under the PSLRA, plaintiffs may rely on confidential witnesses 'provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'"  *Owens v. Jastrow*, 789 F.3d 529, 542 n.11 (5th Cir. 2015) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 352 (5th Cir. 2002)).[2]  Whether anonymous sources are described with sufficient

---

[2] In *ABC Arbitrage*, the Fifth Circuit adopted the Second Circuit's standard for reliance on anonymous sources as set forth in *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000).  *See ABC Arbitrage*, 291 F.3d at 351-52.  The district court cases about short seller reports cited by

3

particularity is a pleading question that must be considered on a motion to dismiss, and Fifth Circuit courts discount or disregard anonymous allegations that lack particularity.  *See, e.g.*, *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 n.2 (5th Cir. 2016) (doubting the sufficiency of confidential witness allegations because it was "unclear from the descriptions" of the witnesses whether they would know the information pleaded).

The Complaint utterly fails to satisfy the Fifth Circuit's standard for confidential witness allegations.  There are no particularized descriptions of the "former executives" and "former agents" cited by Fuzzy Panda, such as where they worked and when, or their job responsibilities.  *See* Mot. at 11-12.  Without those details, it is impossible to connect the alleged observations of the confidential sources to Defendants' statements and their state of mind.[3]  Even if Plaintiffs located the witnesses themselves rather than rely on Fuzzy Panda, the allegations would not satisfy the PSLRA's heightened pleading standard.[4]  The Opposition does not respond to these points.

The fact that the confidential witness allegations came to Plaintiffs secondhand through an anonymous short seller without any independent corroboration only further demonstrates Plaintiffs' failure to meet the Fifth Circuit standard for reliance on confidential sources, and the cases cited in the Opposition prove this point.  In three of the cases,[5] the plaintiffs provided

---

Defendants also apply the *Novak* standard to anonymous short seller reports.  *See, e.g., In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (citing the *Novak* standard); *Leacock v. IonQ, Inc.*, No. CV DLB-22-1306, 2023 WL 6308045, at *13 (D. Md. Sept. 28, 2023) (same).  The cases are directly on point because they apply the same standard as the Fifth Circuit.

[3] *See, e.g.*, *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 517 (S.D. Tex. 2017) (confidential witness allegations failed because they did not specify that events described by the witness were known to defendants or occurred during the class period).

[4] *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 552 (5th Cir. 2007) (confidential witness allegations lacked sufficient detail where they did not include "particular job descriptions, individual responsibilities, and specific employment dates").

[5] *See In re Cassava Scis., Inc. Sec. Litig.*, No. 1:21-CV-751, 2023 WL 3442087, at *8 n.7 (W.D. Tex. May 11, 2023) (noting that the complaint included photographic evidence that corroborated

4

corroboration for the short seller reports through documentary evidence, additional factual allegations, or confidential witnesses located by plaintiffs' counsel. Here, Plaintiffs simply assert that they "allege corroborating facts" but do not specify what those facts are. Opp. at 10.

In the fourth case cited by the Opposition, the defendants' only argument was that the court should not consider the short seller reports "because they are the publications of a short seller and thus unreliable." *Handal v. Tenet Fintech Grp. Inc.*, No. 21-cv-6461, 2023 WL 6214109, at *12 (E.D.N.Y. Sept. 25, 2023). That is not Defendants' argument. The Court should reject the Fuzzy Panda allegations because they do not satisfy the Fifth Circuit's standard for reliance on anonymous sources, and not solely due to Fuzzy Panda's financial motivation as a short seller.

## II. The Complaint Does Not Raise a Strong Inference of Scienter.

Scienter is the intent requirement for a securities fraud claim and requires Plaintiffs to allege particularized facts raising a strong inference of intent to deceive or severe recklessness. *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). The Opposition plays down the heightened standard and wholly ignores the requirement to "allege specific facts about the defendant speaker's state of mind <u>when each challenged statement was made</u>." *Edgar v. Anadarko Petroleum Corp.*, No. 17-1372, 2019 WL 1167786, at *7 (S.D. Tex. Mar. 13, 2019) (emphasis added). The Complaint does not connect any challenged statement to the state of mind of an Individual Defendant and must be dismissed on that basis alone.

Plaintiffs challenge over 170 statements made during a 59-month period by Globe Life and by certain of the Individual Defendants. *See* ECF No. 39-1. There is no exception to the PSLRA's

---

claims of data manipulation); *Schneider v. Natera, Inc.*, No. 1:22-CV-398-DAE, 2023 WL 9958265, at *9 (W.D. Tex. Sept. 11, 2023) (allowing plaintiffs to rely on a short seller report because they "alleged corroborating facts"); *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 668 (M.D. Tenn. 2022) (explaining that statements from confidential witnesses interviewed by plaintiffs' counsel "were echoed by" the short seller report).

heightened pleading requirements for a prolix pleading.  Plaintiffs must still allege specific facts about each Individual Defendant's state of mind at the time of each challenged statement.  Greer and Scarborough are the only Individual Defendants alleged to have received any information about purported misdeeds at AIL, and Plaintiffs do not specify when they received that information or allege any facts suggesting that the information was shared with any other Individual Defendant.  *See* Mot. at 27-28.  Nor do Plaintiffs allege that Greer or Scarborough made any challenged statement or caused Globe Life to make a challenged statement.  *Id.*

The failure to connect Greer and Scarborough's alleged knowledge to a challenged statement prohibits any inference of scienter from the allegations.  The Opposition does not address this point and therefore concedes it.  *See Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 693 (S.D. Tex. 2023) ("Failure to brief a point forfeits opposition to that point.").  The Opposition instead focuses on generalized theories of scienter but does not engage with Defendants' authority showing why such boilerplate allegations fail to show scienter.

***Allegations from Unrelated Litigation.***  The Opposition retreads allegations made in the *Dehning* and *Zinsky* lawsuits, both of which have been dismissed with prejudice.  Plaintiffs first argue that an affidavit from Scott Dehning shows problems with "fraud" and "sexual harassment" at AIL.  Opp. at 25.  In the case that Plaintiffs cite, the complaint showed that defendants knew of incidents that were red flags for potential security issues prior to a massive data breach and presented allegations from ten former employees that directly contradicted statements of commitment to cyber security.  *See In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 584-85 (W.D. Tex. 2022).  Here, there is a lone affidavit from an unrelated case without any connection between Dehning's alleged observations and what the Individual Defendants knew or should have known at the time of any challenged statement during the 59-month-long Class Period.

6

Plaintiffs then turn to what they describe as the "Zinsky-Russin Stipulation." Opp. at 25. Even setting aside the impropriety of the "Stipulation" (*see* Mot. at 22 n.10), it does not explain the basis for Michael Russin's supposed "knowledge" that AIL was aware of alleged sexual harassment. ECF No. 24-3 at PDF pgs. 15-16. Nor does it specify when or how many times "AIL agents in the Arias office … may have performed unethical and/or fraudulent sales practices." *Id.* at PDF pg. 17. And, of course, Plaintiffs do not connect any of the vague and bargained-for assertions to the state of mind of any Individual Defendant.

Finally, Plaintiffs try to rehabilitate the *Dehning* and *Zinsky* allegations by citing cases holding that a plaintiff in a securities case may rely on allegations from other lawsuits. Opp. at 26. Those cases are irrelevant to Defendants' argument, which is that <u>unsubstantiated</u> allegations from other lawsuits—meaning allegations that do not result in liability—do not raise a strong inference of scienter because they do not show that Defendants "knew the allegations to be true or recklessly disregarded them." *Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 468 (E.D. Pa. 2019). This is the same argument made in the Opposition. Opp. at 25-26.

***Consumer Complaints.*** The Opposition refers to a collection of consumer complaints and cites several inapposite cases to argue that these complaints raise a strong inference of scienter. Opp. at 27-28. None of these cases involved scienter allegations based on consumer complaints, and they certainly do not hold that a collection of anonymous complaints "corroborates" allegations of a "widespread" fraud, as Plaintiffs assert. Opp. at 27. Plaintiffs' cases involved corroborating statements from multiple, reliable confidential witnesses.[6] But Plaintiffs here do not

---

[6] *See In re Toronto-Dominion Bank Sec. Litig.*, No. CV 17-1665, 2018 WL 6381882, at *7, *13 (D.N.J. Dec. 6, 2018) (statements from nine CWs "employed in the very branches and departments that are alleged to have engaged in improprieties" raised a strong inference of scienter); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008) (statements from eleven CWs across the United States painted a "compelling portrait" of the alleged fraud).

have any reliable confidential witnesses, and statements from unattributed online reviews are a poor substitute. In contrast, Defendants' motion cited a Western District of Texas opinion holding that "customer complaints" did not raise a strong inference of intent to deceive or severe recklessness because plaintiffs "did not allege that any Defendant knew about these complaints, who received the complaints, who was responsible for adjudicating them, and when Defendants were otherwise made aware of them." *Pang v. Levitt*, No. 1:22-CV-01191, 2023 WL 11643704, at *13 (W.D. Tex. Dec. 20, 2023). The same information is missing from Plaintiffs' allegations.

The Opposition's last-ditch effort is to point to a statement by Defendant Darden regarding the *Zinsky* litigation where he said that AIL has multiple ways for sales agents to raise concerns about improper conduct and that AIL takes those allegations seriously. *See* Ex. 20 (Feb. 8, 2024 Earnings Call Transcript) at 5-6. The statement has nothing to do with consumer complaints made to third parties and is nothing like the situation in *In re VeriFone Holdings, Inc. Securities Litigation*, 704 F.3d 694, 708-09 (9th Cir. 2012), where two individual defendants received consecutive quarterly reports that contradicted their public representations about earnings targets.

***Fuzzy Panda.*** The Opposition's discussion of the Fuzzy Panda report as it relates to scienter is no more than a repackaging of Plaintiffs' other insufficient allegations. Opp. at 28-29. *First*, the statements attributed by Fuzzy Panda to anonymous sources are not reliable under Fifth Circuit law, as described above in Section I. *Second*, Plaintiffs cite again to the Dehning Affidavit and the assertion made therein that Dehning sent "more than 200 emails" to "Company executives." Opp. at 29. However, Plaintiffs still offer no response to Defendants' argument that the allegation does not raise a strong inference of scienter in the absence of details on the dates of the e-mails, their content and character, and who received them. *See* Mot. at 28.

*Third*, the Opposition regurgitates Fuzzy Panda's allegations about "AIL agencies with

8

fraudulent insurance issues" and repeats the claim that those agencies "accounted" for "more than $200 million of AIL's new ALP in 2023." Opp. at 29. Absent from the Opposition is an explanation of how those allegations demonstrate an intent to deceive or severe recklessness on behalf of any Individual Defendant. *Fourth*, Plaintiffs cite unsubstantiated allegations from hostile work environment lawsuits against AIL, which do not raise a strong inference of scienter because they have not resulted in an adverse finding against Globe Life, and because Plaintiffs do not connect the allegations to the state of mind of an Individual Defendant who made a challenged statement or caused Globe Life to make a challenged statement. *See supra* at 3-7; Mot. at 28.

***Executive Compensation.*** The Opposition's discussion of executive compensation is, once again, no more than a recitation of the Complaint's allegations. *See* Opp. at 30. Plaintiffs claim that unspecified Individual Defendants received performance share awards and assert that bonuses for five Individual Defendants[7] were "tied to AIL's financial performance," but they still do not provide the metrics for the share awards or explain how AIL's performance impacted bonuses other than to say that AIL is important to Globe Life. More is required to plead scienter, otherwise any executive receiving a bonus or stock options would have a "motive" for fraud. *See* Mot. at 30-31 (detailing problems with the executive compensation allegations and citing relevant authorities).

***Stock Sales.*** Plaintiffs acknowledge that to raise an inference of scienter based on insider stock sales, the Complaint must allege that the trading occurred at suspicious times or in suspicious amounts. Opp. at 30 (quoting *Diodes*, 810 F.3d at 959). The Fifth Circuit has held that trading is suspicious when a sale is in an amount that is inconsistent with prior trading patterns or at a time that maximizes personal profit. *See Diodes*, 810 F.3d at 959. Rather than identifying sales that

---

[7] Only five Individual Defendants (Coleman, Hutchison, Svoboda, Darden, and Greer) were alleged in the Complaint to have received bonuses. ¶¶ 272, 274-275.

are suspicious under Fifth Circuit law, the Complaint simply aggregates sales from the Class Period and the 59 months before the Class Period (the "Control Period") and calls the difference suspicious. That approach has been specifically rejected by Fifth Circuit courts. *See Asar*, 768 F. App'x at 182; *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 600 (N.D. Tex. 2021).

When analyzing the Individual Defendants' sales in accordance with Fifth Circuit law, the trading patterns actually negate an inference of scienter. Coleman and Hutchison sold less of their shares as a total percentage of their overall holdings during the Class Period than they did during the Control Period. Mot. at 32. Svoboda consistently sold all or nearly all of his shares during both periods. *Id.* at 33. Henrie and Mitchell sold more shares during the Control Period than they did during the Class Period. *Id.* And Coleman, Hutchison, and Svoboda retained hundreds of thousands of Globe Life shares at the end of the Class Period. *Id.* at 32-33. Plaintiffs' improper aggregation technique obscures these non-suspicious trading patterns.

The Opposition entirely ignores these points and thereby concedes that the trading patterns are not suspicious. Plaintiffs also fail to address the non-culpable explanations for the lack of sales by Kalmbach, Greer, and Haworth during the Control Period (June 3, 2014 to May 7, 2019). Mot. at 33. In other words, Plaintiffs effectively concede all of Defendants' stock sale arguments.

***The Core Operations Doctrine.*** None of the four "special circumstances" that would allow for an inference of scienter based on an individual defendant's position in a company are present in this case. *First*, with over 3,000 employees, Globe Life is 30 times larger than the typical company subject to the core operations doctrine, which generally has less than 100 employees. *See Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017). Even the case cited by Plaintiffs acknowledges that a company's large size "undermines the 'core operations' theory." *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 219 (5th Cir. 2023).

10

*Second*, the "critical transaction" circumstance involves a "single" product or asset that jeopardizes a company's very existence. *Neiman*, 854 F.3d at 750. Plaintiffs do not allege facts suggesting that alleged misconduct would have jeopardized AIL or Globe Life's very existence. *Third*, there are no allegations showing that any misstatement or omission was readily apparent to any Individual Defendant. Plaintiffs argue that information about AIL's sales practices was readily apparent because Defendants "spoke to analysts" about AIL, but they do not explain how that allegation is any different from the nearly identical allegation rejected in *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 699 (S.D. Tex. 2013). *Fourth*, the Opposition concedes that the Complaint does not allege internally inconsistent statements by Defendants. While no one special circumstance is dispositive, one is not alleged at all and the other three do not apply.

**Government "Investigations."** The Complaint alleges that a DOJ subpoena, an informal SEC inquiry, and an EEOC discrimination charge would have put Defendants on "notice" of potential issues related to insurance fraud, sexual harassment, and worker classification. *See* ¶¶ 345, 356. Those matters are irrelevant to scienter because they did not occur until the very end of the Class Period or after the Class Period ended and thus cannot show any knowledge or severe recklessness with respect to the challenged statements. Mot. at 36. The Opposition offers no response to this point. If Plaintiffs' argument is that the mere existence of government inquiries shows an intent to deceive, that contention has been squarely rejected by Fifth Circuit courts. Plaintiffs must plead facts that "link the specific defendants" to knowledge of the matters underlying the inquiries. *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 630 (S.D. Tex. 2022). The Complaint does not provide that necessary link.

**Stock Buybacks.** The Opposition repeats the unsupported claim that Globe Life authorized a stock buyback program to mitigate the decline in the Company's share price following the Fuzzy

11

Panda report. Opp. at 33-34. But the Complaint does not provide any allegations that overwhelm the nonculpable explanation that Globe Life bought back its shares because it believed the stock was undervalued—unlike the *Countrywide* case cited by the Opposition. In *Countrywide*, the court held that a buyback was suspicious where board members approved a $2.4 billion repurchase and "nearly contemporaneously liquidate[d] $148 million of their personal holdings just months before the stock dropped some 80–90%." 554 F. Supp. 2d at 1067. There are no similar allegations here.

*SOX Certifications.* The Opposition's final scienter argument is based on SOX certifications of Globe Life's financial statements. Opp. at 34. This theory was not raised in the Complaint and should not be considered by the Court. But in any event, there are no specific allegations that "glaring accounting irregularities or other 'red flags'" gave the certifying Defendants reason to know of material misstatements in the financial statements, as required for scienter based on SOX certifications. *Integrated Elec. Servs.*, 497 F.3d at 555 (citation omitted).

## III.   Plaintiffs Do Not Plead a False or Misleading Statement.

The Court should also dismiss the Complaint because Plaintiffs have not met their burden to plead a false or misleading statement with particularity. The Opposition concedes multiple reasons to dismiss each category of challenged statements and fails to meaningfully engage with the wealth of Fifth Circuit authority on falsity that Defendants cite in their Motion.

*Business Culture Statements.* Statements about Globe Life's general commitment to business ethics are immaterial as a matter of law because the statements are "too general to cause a reasonable investor to rely on them." *In re KBR, Inc. Sec. Litig.*, No. CV H-17-1375, 2018 WL 4208681, at *5 (S.D. Tex. Aug. 31, 2018) (citation omitted).[8] This is particularly true with respect

---

[8] The Opposition mischaracterizes materiality of the business culture statements as a fact issue that cannot be determined on a motion to dismiss. But one of the Fifth Circuit cases cited by Plaintiffs rejected the argument that materiality is necessarily a question for the jury and affirmed dismissal for lack of materiality. *See Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004).

to code of conduct statements, which are "inherently aspirational." *Id.* (citation omitted).

Defendants' motion to dismiss walks through the various business culture statements and cites Fifth Circuit cases holding that similar statements were immaterial because they were general statements of commitment, rather than specific factual representations, and thus would not lead a reasonable investor to rely on them. *See* Mot. at 13-14. The Opposition tries to distinguish those cases by asserting that Defendants' statements are more specific, Opp. at 46, but Plaintiffs do not cite any examples of concrete, verifiable representations in the statements. In fact, the business culture statements quoted in the Opposition only reinforce the conclusion that the representations were general and aspirational. *See, e.g.*, Opp. at 11 (citing Globe Life's stated goal to conduct business "with integrity and in accordance with the highest ethical standards").

The contrast between the business culture statements quoted in the Complaint and the statements found to be actionable in Plaintiffs' cases further illustrates why the challenged statements are immaterial. In *Brody v. Zix Corp.*, the defendants provided specific historical data and forecasts to investors (*e.g.*, anticipated quarterly customer commitments of $2.25 to $2.5 million), which the court described as "concrete factual information" that was "more than vague or optimistic." No. 3:04-CV-1931, 2006 WL 2739352, at *4 (N.D. Tex. Sept. 26, 2006). In another example, a court held that code of ethics statements were actionable because they went beyond expression of a "general" policy to conduct business with integrity and represented that the company maintained a "a system of internal accounting controls sufficient to provide reasonable assurances that all transactions were properly executed and recorded." *Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*, No. 19-CV-217, 2021 WL 9037758, at *24 (W.D. Tex. Sept. 13, 2021). The Complaint does not allege any similar business culture statements by Globe Life.

Finally, Plaintiffs cite a collection of cases from outside the Fifth Circuit for the proposition

13

that even if the business culture statements are immaterial, they are still actionable if they are at odds with the conduct alleged in the complaint. *See* Opp. at 13-14. That is not the rule in the Fifth Circuit, as shown by the rejection of that very argument in a recent decision from the Western District of Texas. *See In re Tesla Inc. S'holder Derivative Litig.*, No. 1:22-CV-00592, 2023 WL 6060349, at *5-6 (W.D. Tex. Sept. 15, 2023) (rejecting the argument that an immaterial statement of commitment to an environment without mistreatment was actionable because it "misrepresented the true state of affairs" and did not disclose "rampant and ongoing discrimination").

***Financial Results Statements.*** The Complaint challenges two types of statements about Globe Life's financial results: (1) Life Net Sales and Life Premium results reported in Globe Life's quarterly and annual financial statements from 2019 to 2023 (¶ 196) and (2) statements on earnings calls about drivers of growth in those results (¶¶ 198-220). The Opposition largely concedes three reasons why the financial results statements must be dismissed.

*First*, as to the Life Net Sales and Life Premium results reported by Globe Life in its audited financial statements, the Complaint does not allege how the reported results listed in the chart in Paragraph 196 were false. The discussion of this concept in *Markman v. Whole Foods Market, Inc.,* No. 1:15-CV-681, 2016 WL 10567194 (W.D. Tex. Aug. 19, 2016) is instructive.

The plaintiffs in *Markman* challenged the sales, net income, and gross profit results reported in Whole Foods's financial statements and alleged that the historical results (*e.g.*, Q3 net income of $142 million) were false because Whole Foods systematically overcharged for prepackaged goods by inaccurately weighing the items at check out. *Id.* at *2, *9. The court held that the allegations failed because the complaint did not explain how inaccurately weighed items made "any specific financial results" false. *Id.* at *9. Put differently, the complaint did not explain what the results would have been without overcharging—meaning what the "true" quarterly sales,

14

net income, and gross profit figures were.  The Complaint suffers from the same problem.

Plaintiffs challenge dozens of quarterly and annual results without alleging what the "true" financial results were, and therefore how the reported results were false.  For example, in Q2 2019, Globe Life reported $631 million in Globe Life Total Life Premium.  ¶ 196.  The Complaint does not allege what that number would have been for Q2 2019 (or any other quarter) if not "inflated" by alleged misconduct (*e.g.*, what Globe Life Total Life Premium was for Q2 2019 if not $631 million).  The Opposition's assertion that "Plaintiffs have alleged the percentages and dollar amounts of misconduct that impacted the Company's financial results" is simply not true.[9]

*Second*, the Complaint does not allege with particularity that the earnings call statements describing the drivers in growth for the reported results were false.  ¶¶ 198-220.  Here again the Complaint relies on the Fuzzy Panda report and its anonymous sources that cannot satisfy the PSLRA's pleading standard.  Mot. at 16-19; ¶ 221.  Plaintiffs try to characterize this as a duty of disclosure issue, in that Defendants had to disclose on the earnings calls that increases in Net Life Sales and Life Premium were allegedly "inflated by fraudulent and deceptive sales practices." Opp. at 16.  But the premise—that results were materially inflated by fraud—is not supported by particularized factual allegations, and thus the Complaint does not allege a duty of disclosure.

*Third*, the theory of fraud with respect to Globe Life's audited financial results is simply not plausible.  Even assuming the bare bones Fuzzy Panda allegations regarding sham policies to

---

[9] This claim in the Opposition relies on the "Annualized Life Premium" ("ALP") allegations in the Complaint, but the ALP allegations do not show the falsity of results reported by Globe Life. *First*, the Complaint does not tie "ALP" for AIL to the reported Life Net Sales and Life Premium results, and the brand-new explanation in footnote 4 to the Opposition is not enough to plead falsity with particularity for five years of Globe Life financial results. *Second*, even assuming there is some connection between ALP and Globe Life's reported results, the ALP allegations in the Complaint were specific to 2023 and cannot demonstrate falsity of any result in the prior four years (2019-2022). *Third*, the ALP allegations come from Fuzzy Panda's unreliable anonymous sources. *See* Mot. at 17-18.

15

be true, the allegations do not reconcile with related information reported in the financial statements, such as "other receivables" and "allowance for credit losses," or the first-year policy lapse rates published by Globe Life. *See* Mot. at 19-21. The Opposition's response is essentially that a massive fraud could continue for *five years* without any red flags in Globe Life's financial results (*i.e.*, write offs of other receivables and increasing allowances for credit losses) and without any restatements of Globe Life's audited financial statements. That is not plausible, and courts considering similar situations have dismissed statements about reported financial results because they were not sufficiently alleged to be false. *See* Mot. at 39, n.8, n.9.

*Privacy Statements.* The only privacy statement addressed in the Opposition is a risk factor disclosure in Globe Life's Form 10-K filings from 2019 through 2023. Opp. at 19 (citing ¶¶ 222-223).[10] Plaintiffs claim that the disclosure was false or misleading each time it was made over a five-year period because it "omitted" that some AIL agencies allegedly violated privacy laws and thus presented the risk as a possibility when it had materialized. Opp. at 19-20. But Plaintiffs concede that they do not sufficiently allege materialization of the risk because the Complaint relies only on undated observations by Fuzzy Panda's anonymous sources and the vague statement in the Zinsky-Russin Stipulation that unknown AIL agents at one agency "may have" taken information from the customer management system. Mot. at 22 (citing ¶¶ 9, 103-104, 223, 296).

The Court can also dismiss the risk factor statements because Plaintiffs concede that they do not allege actual knowledge on behalf of an Individual Defendant of a material failure to comply with privacy regulations at the time of the statements. Mot. at 23 n.11. The "actual knowledge" prong of the PSLRA's safe harbor for forward-looking statements is an independent basis for

---

[10] The Opposition does not respond to Defendants' arguments regarding the 2019 ESG report statement (¶ 224) and thus concedes that Plaintiffs fail to allege with particularity that access to personal information was not restricted on a "need to know" basis. Mot. at 23.

dismissal even if a risk had allegedly materialized at the time of the statements.[11]

***Recruitment and Retention Statements.***  Plaintiffs' allegations and arguments about the recruitment and retention statements suffer from the same problems as the financial result statements.  With respect to the historical data on the number of AIL agents reported by Globe Life in SEC filings and earnings calls (¶¶ 226-230), the Court cannot hold that those reported numbers were false or misleading because Globe Life allegedly failed to disclose misconduct related to agent recruitment.  *See* Mot. at 23-24.  Like Globe Life's reported financial results, Plaintiffs must allege what the "true" agent recruitment numbers were and provide a particularized factual basis to support the allegation.  *Id.*  Plaintiffs claim that they are not required to do so, Opp. at 21 n.9, but they are wrong.  *See Match Grp., Inc.*, 529 F. Supp. 3d at 592.

The Court should also dismiss the challenged statements about agent recruitment and retention made during investor and analyst calls.  ¶¶ 231-237.  Incredibly, Plaintiffs rely again on Fuzzy Panda and argue this case is "unlike *Ng v. Berkeley Lights*," where the complaint relied on statements from anonymous former employees in a short seller report but did not allege any particularized details about the former employees' job titles or periods of employment.  Opp. at 21-22 (quoting *Berkeley Lights*, 2024 WL 695699 at *9).  But that is exactly the information missing from the Complaint, and without those details, it is impossible to connect the anonymous source allegations about recruitment and retention to the statements on investor and analyst calls.

***SOX Statements.***  Plaintiffs fail to allege that the challenged SOX certification and assessment statements are false or misleading under Fifth Circuit law.  The Opposition either

---

[11] *See Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-CV-00194, 2022 U.S. Dist. LEXIS 178454, at *30-32 (N.D. Tex. Sep. 29, 2022) (rejecting the argument that forward-looking statements were actionable because the risks "had already begun to materialize" because imposing liability "when Defendants did not in fact apprehend the problems would render the PSLRA's requirement that Plaintiffs plead actual knowledge meaningless").

concedes Defendants' arguments in favor of dismissal or does not apply the correct legal standard.

With respect to the SOX Section 302 certifications of Globe Life's annual and quarterly SEC filings (¶¶ 249-250), Plaintiffs concede that the Complaint must allege, for all 20 of the quarterly and annual SEC filings with Section 302 SOX certifications (¶ 250), that (a) the financial results were not as reported, and (b) Individual Defendants Hutchison, Coleman, Svoboda, Darden, and/or Kalmbach knew the same.  Mot. at 25-26.  The Complaint does not do so.  There are zero allegations regarding the "true" financial results or the certifying Defendants' knowledge.

The Complaint also challenges SOX Section 404(a) assessments of the effectiveness of Globe Life's internal controls over financial reporting.  ¶¶ 254-255.  These allegations fail because Fifth Circuit law draws a distinction between (a) the assessment of the effectiveness of internal controls for financial reporting and (b) the assessment of effectiveness of internal controls for compliance (Mot. at 26), but Plaintiffs want the Court to assume that the concepts are interchangeable (Opp. at 23).  To be clear: the Complaint challenges only "Management's Report on Internal Control over Financial Reporting" (¶¶ 249-250) based on alleged deficiencies in internal controls over compliance (¶ 256).  That does not plead falsity of assessments of internal controls over financial reporting, as shown by the dismissal of a complaint that made the same error in *Linenweber v. Southwest Airlines Co.*, 693 F. Supp. 3d 661, 681-82 (N.D. Tex. 2023).

### IV.    The Complaint Fails to Plead Loss Causation.

The Court should dismiss the Complaint for the independent reason that it does not sufficiently allege a corrective disclosure that "revealed the falsity" of any prior statements to the market.  *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 907 (W.D. Tex. 2008).  The first alleged corrective disclosure is the March 13, 2024 announcement of Globe Life's cooperation with DOJ subpoenas.  ¶ 364.  The Opposition agrees that the announcement of a government investigation, standing alone, is not a corrective disclosure.  Opp. at 39.  Plaintiffs need more, and

they argue that the March 13, 2024 announcement is enough if coupled with the Fuzzy Panda report. Opp. at 39. Plaintiffs are wrong. The Fuzzy Panda report is not a corrective disclosure because Fuzzy Panda's bias and its disclaimer of the accuracy of its report means that reasonable investors do not perceive the publication as revealing the falsity of the challenged statements. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020).[12]

### V.    Plaintiffs Have Not Alleged a Scheme Claim.

Count II alleges a scheme claim pursuant to Rule 10b-5(a) and (c). ¶¶ 388-394. Scheme claims are "based on deceptive conduct, while Rule 10b-5(b) claims are based on deceptive statements or omissions." *SEC v. Verges*, 716 F. Supp. 3d 456, 466 (N.D. Tex. 2024). As (briefly) alleged in the Complaint, the so-called scheme was the "cover-up" of (1) an alleged "pyramid-like MLM scheme" and (2) "a culture" that ignored fraud and rewarded recruitment. ¶ 391. But the paragraphs associated with Count II do not specify which Individual Defendants were involved in the "MLM/recruitment" scheme, and instead just refer to the "Individual Defendants" as a group. ¶¶ 388-394. And the section of the Complaint that focuses on the MLM/recruitment allegations does not allege the involvement of any Individual Defendant, let alone any specific deceptive act in furtherance of the purported MLM/recruitment scheme. *See* Mot. at 39-40.

Plaintiffs now try to rewrite the scheme claim in their Opposition brief. Plaintiffs first claim that they have alleged a deceptive or manipulative act because Individual Defendants made

---

[12] Plaintiffs try to distinguish *BofI* by arguing that Fuzzy Panda based its report on non-public information, while the short seller in *BofI* did not, but that point is entirely irrelevant. Opp. at 40. The Ninth Circuit held that "even if the [short seller] posts disclosed information that the market was previously unaware of, it is not plausible that the market reasonably perceived these posts as revealing the falsity of BofI's prior misstatements" because the posts were "authored by anonymous short-sellers who had a financial incentive to convince others to sell, and the posts included disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article.'" 977 F.3d at 797. The same is true of the Fuzzy Panda report and thus it is not a corrective disclosure.

the challenged statements underlying the Rule 10b-5(b) claim in Count I.  Opp. at 36.  But Count II disclaims reliance on those alleged misstatements as the basis for the scheme claim.  *See* ¶ 389 ("Plaintiffs need not allege or prove … any of the misrepresentations or omissions … under Rule 10b-5(b) … for all Defendants to have liability under Count II.").  Moreover, Plaintiffs must allege deceptive conduct "beyond the disputed statements and omissions themselves" and in furtherance of the MLM/recruitment scheme.  *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-CV-00194, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023).  The Complaint does not do so.

Plaintiffs claim that they have alleged deceptive and manipulative acts by Individual Defendants Greer and Scarborough based on the alleged concealment of "deceptive business practices."  Opp. at 37 (citing ¶ 295).  Plaintiffs point to an alleged conversation between Scarborough and former employee Dehning in which Scarborough supposedly told Dehning to stop speaking with a state department of insurance about AIL's sales practices.  That allegation does not show concealment of the MLM/recruitment "scheme" alleged in Count II because the purported conversation was about sales practices, not recruiting practices.

Plaintiffs also assert that they have alleged scheme liability as to Individual Defendants Mitchell and Henrie because they may have received complaints regarding code of conduct violations.  Opp. at 37.  But, again, the allegations that Plaintiffs rely on are specific to sales practices, not recruitment practices.  *See id.* ("[T]hey remained silent about deceptive practices at AIL that were artificially enhancing the Company's publicly reported sales and premium results.") (emphasis added).  The allegation is therefore irrelevant to the alleged MLM/recruitment scheme.

## CONCLUSION

For the reasons stated herein, the Court should grant Defendants' Motion to Dismiss.

20

Dated: February 28, 2025        Respectfully submitted,


By:    */s/ Paul R. Bessette*

Paul R. Bessette
Texas State Bar No. 02263050
Michael J. Biles
Texas State Bar No. 24008578
Frances Fink
Texas State Bar No. 24135291
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
ffink@kslaw.com

*Counsel for Defendants*

21

## CERTIFICATE OF SERVICE

I certify that on February 28, 2025, the above document was served on counsel of record for all parties via the CM/ECF system.

/s/ Paul R. Bessette
Paul R. Bessette