UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:24-cv-00376-ALM |
| | § | CLASS ACTION |
| Plaintiff, | § § § | |
| vs. | § § | |
| GLOBE LIFE INC. f/k/a TORCHMARK CORPORATION, et al., | § § § § | |
| Defendants. | § § § § | |

PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

4918-5135-3644

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.    ARGUMENT....................................................................................................2

      A.    Defendants' Factual Counter-Narrative Is Improper ..............................................2

      B.    Multiple Reliable Sources Corroborate the Fuzzy Panda Report ...........................3

      C.    The Complaint Raises a Strong Inference of Scienter as to All Defendants ...........4

      D.    The Complaint Adequately Alleges False and Misleading Statements and Omissions...............................................................................................12

      E.    The Complaint Adequately Alleges Loss Causation .............................................17

      F.    The Complaint Plausibly Alleges a Scheme Claim ..............................................18

III.    CONCLUSION................................................................................................20

4918-5135-3644

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
291 F.3d 336 (5th Cir. 2002) ...................................................................................................7

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019) .........................................................................................2, 8

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005), *modified*, 409 F.3d 653 (5th Cir. 2005) ....................................8

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
2021 WL 2646353 (E.D.N.Y. June 28, 2021) .........................................................................17

*Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*,
2025 WL 897540 (N.D. Ga. Mar. 24, 2025).............................................................................7

*Bush v. Blink Charging Co.*,
2023 WL 8263037 (S.D. Fla. Nov. 27, 2023)..........................................................................18

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016),
*amended*, 2016 WL 3959164 (S.D. Tex. July 22, 2016) ..........................................................10

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
497 F.3d 546 (5th Cir. 2007) ...................................................................................................9

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...................................................................................................2

*Crutchfield v. Match Grp., Inc.*,
529 F. Supp. 3d 570 (N.D. Tex. 2021) .................................................................................8, 16

*Dawes v. Imperial Sugar Co.*,
975 F. Supp. 2d 666 (S.D. Tex. 2013) ....................................................................................10

*Edgar v. Anadarko Petrol. Corp.*,
2019 WL 1167786 (S.D. Tex. Mar. 13, 2019),
*aff'd sub nom. Iron Workers Benefit & Pension Fund –
Iron Workers Dist. Council Phila. & Vicinity v. Anadarko Petrol. Corp.*,
788 F. App'x 268 (5th Cir. 2019) .............................................................................................4

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ...................................................................................................2

4918-5135-3644

**Page**

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ........................................................................................11

*Garcia v. J2 Glob., Inc.*,
2021 WL 1558331 (C.D. Cal. Mar. 5, 2021)...................................................................3

*Hall v. Rent-A-Center, Inc.*,
2017 WL 6379334 (E.D. Tex. Dec. 14, 2017)...............................................................12

*Hedick v. Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...............................................................13

*Hunt v. BAC Home Loans Servicing, LP*,
2012 WL 219330 (S.D. Tex. Jan. 24, 2012) ...................................................................2

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) ...........................................................................11

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)......................................................................9, 12

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ........................................................................................18

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2020 WL 3026564 (D.N.J. June 5, 2020)......................................................................19

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ........................................................................12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................................................6

*In re First Union Corp. Sec. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001) ...............................................................7, 14, 15

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) .................................................................................17, 18

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...........................................................................13

*In re Lumen Techs., Inc. Sec. Litig.*,
2024 WL 4637293 (W.D. La. Sept. 30, 2024)............................................................2, 3

4918-5135-3644

**Page**

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ...................................................................................18

*In re SolarWinds Corp. Sec. Litig.*,
   595 F. Supp. 3d 573 (W.D. Tex. 2022)...................................................................................5, 6

*In re Tesla Inc. S'holder Derivative Litig.*,
   2023 WL 6060349 (W.D. Tex. Sept. 15, 2023)......................................................................13

*In re Towne Servs., Inc. Sec. Litig.*,
   184 F. Supp. 2d 1308 (N.D. Ga. 2001)...................................................................................16

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017) .............................................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ..................................................................................................7

*In re XL Fleet Corp. Sec. Litig.*,
   2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)...........................................................................3

*Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
   432 F. Supp. 2d 571 (E.D. Va. 2006) ...............................................................................14, 15

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ..................................................................................................11

*Linenweber v. Sw. Airlines Co.*,
   693 F. Supp. 3d 661 (N.D. Tex. 2023) ...................................................................................16

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
   810 F.3d 951 (5th Cir. 2016) ..................................................................................................8

*Lorenzo v. SEC*,
   587 U.S. 71 (2019)...............................................................................................................18, 19

*Markman v. Whole Foods Mkt., Inc.*,
   2016 WL 10567194 (W.D. Tex. Aug. 19, 2016)....................................................................14

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013)....................................................................................3

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ..................................................................................................10

4918-5135-3644

**Page**

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
   58 F.4th 195 (5th Cir. 2023) ........................................................................10, 11, 14

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) ......................................................................................10

*Pang v. Levitt*,
   2023 WL 11643704 (W.D. Tex. Dec. 20, 2023) ........................................................7

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ......................................................................................17

*Satanic Temple Inc. v. Young*,
   681 F. Supp. 3d 685 (S.D. Tex. 2023) ........................................................................5

*Schneider v. Natera, Inc.*,
   2023 WL 9958265 (W.D. Tex. Sept. 11, 2023).........................................................17

*SEC v. Carter*,
   2020 WL 6304889 (E.D. Tex. Oct. 28, 2020) ...........................................................19

*SEC v. Complete Bus. Sols. Grp., Inc.*,
   538 F. Supp. 3d 1309 (S.D. Fla. 2021) ......................................................................19

*SEC v. Kameli*,
   2020 WL 2542154 (N.D. Ill. May 19, 2020) .............................................................19

*SEC v. SeeThruEquity, LLC*,
   2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019)......................................................19, 20

*Tang Cap. Partners, LP. v. BRC Inc.*,
   661 F. Supp. 3d 48 (S.D.N.Y. 2023).........................................................................17

*Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ..........................................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)......................................................................................................5

*Torres v. S.G.E. Mgmt., L.L.C.*,
   838 F.3d 629 (5th Cir. 2016) ......................................................................................15

*Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinox, Inc.*,
   2025 WL 39936 (N.D. Cal. Jan. 6, 2025)....................................................................3

4918-5135-3644

**Page**

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
    28 F. Supp. 3d 93 (D. Mass. 2014) ....................................................................16

*Willow Innovations, Inc. v. Chiaro Tech., Ltd.*,
    2024 WL 4043451 (E.D. Tex. Sept. 4, 2024) ......................................................2

*Yoshikawa v. Exxon Mobil Corp.*,
    2023 WL 5489054 (N.D. Tex. Aug. 24, 2023)................................................19, 20

*Yoshikawa v. Exxon Mobil Corp.*,
    2024 WL 3802997 (N.D. Tex. Aug. 12, 2024)......................................................20

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 9(b) ............................................................................................................7, 16
    Rule 12(b)(6)......................................................................................................2, 17

17 C.F.R.
    §240.10b-5 .......................................................................................................18, 19
    §240.10b-5(a).................................................................................................18, 19
    §240.10b-5(b).................................................................................................18, 19
    §240.10b-5(c).................................................................................................18, 19

## SECONDARY AUTHORITY

*Commission Guidance Regarding Management's Report on Internal Control over Financial Reporting*, SEC Release No. 8810, Securities Act Release No. 33-8810, Exchange Act Release No. 34-55929, 2007 WL 1791162 (June 20, 2007)......................................................17

4918-5135-3644

## I.   INTRODUCTION

The Complaint[1] adequately pleads Plaintiffs' claims, with allegations corroborated by multiple, reliable sources, including: (i) affidavits and lawsuits filed by Company insiders; (ii) the EEOC's investigative determinations regarding Globe Life and AIL; (iii) enforcement actions by state insurance departments; (iv) publicly available information concerning ongoing investigations into Globe Life by the DOJ and SEC; and (v) hundreds of detailed consumer complaints made to the FTC, BBB, and state insurance departments.  Thus, the Reply's claim that Plaintiffs "outsourced their pleading obligations" to "anonymous sources" is wrong.  Reply at 3-5.

The Reply also ignores that the Complaint's scienter allegations must be viewed collectively and holistically.  Instead, Defendants impermissibly suggest that each individual allegation supporting scienter is insufficient on its own, and therefore that the Complaint must be dismissed. That conclusion is at odds with well-established precedent.  When properly reviewed holistically, the Complaint adequately pleads scienter.

Defendants' various contentions concerning falsity fare no better.  Defendants assert that "business culture" statements are immaterial as a matter of law, but they wholly ignore the most concrete statements alleged in the Complaint.  Defendants also misstate the relevant pleading standard governing their challenge of so-called "financial results" and "recruitment and retention" statements.  And they ignore that allegations regarding their "privacy" statements are supported by

---

[1]      "Complaint" refers to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 24).  Capitalized terms not defined herein have the meaning ascribed in the Complaint. The Complaint's paragraphs, sections, and exhibits are referred to herein as "¶__," "Compl. §__," and "Compl. Ex. __," respectively.  Defendants' motion to dismiss (ECF 39) and the exhibits thereto (ECF 39-2-39-21) are referred to herein as "Motion" or "Mot." and "Mot. Ex. __," respectively. "Opposition" or "Opp." refers to Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss the Consolidated Complaint (ECF 46).  "Reply" refers to Defendants' Reply in Support of Motion to Dismiss the Consolidated Complaint (ECF 53).  Unless otherwise noted, citations are omitted and emphasis is added.

4918-5135-3644

numerous sources.  With respect to SOX certification statements, Defendants disregard pivotal SEC guidance and argument from Plaintiffs' Opposition.

Defendants also take issue with the Fuzzy Panda Report being the impetus for the massive April 11, 2024 stock price decline (over 50% in a day).  But, courts routinely uphold loss causation allegations based on short seller reports and the weight of authority does not support Defendants' position.  Finally, Defendants misconstrue Plaintiffs' scheme liability allegations while also misstating the law.  The Motion should be denied.

## II.   ARGUMENT

### A.   Defendants' Factual Counter-Narrative Is Improper

In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded facts must be viewed in the light most favorable to the plaintiff." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  Globe Life's SEC filings and similar documents should not be accepted as true on a motion to dismiss, even if those filings are incorporated into the Complaint.  *See* Opp. at 9 (citing case law).[2]  Particularly inappropriate for judicial notice are the attorney-generated documents presented by Defendants.  *See* Mot. Exs. 11, 14-16; Opp. at 9.[3]

---

[2]   Defendants ignore Plaintiffs' authority on this point and the cases they cite do not support their position.  *See* Reply at 2 n.1.  *Willow Innovations, Inc. v. Chiaro Tech., Ltd.*, 2024 WL 4043451 (E.D. Tex. Sept. 4, 2024), merely states that the court may review documents attached to a motion to dismiss that are "referred to in the complaint and . . . central to the claim." *Id.* at *1.  *Willow* relies on *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000), which clarifies the purpose of such a review: "[T]he defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.  Meanwhile, the court in *Hunt v. BAC Home Loans Servicing, LP*, 2012 WL 219330 (S.D. Tex. Jan. 24, 2012), "accepted as true" the plaintiff's allegations, while including in its recitation of facts information gleaned from documents that were incorporated by reference.  *Id.* at *3.

[3]   *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181 (5th Cir. 2019), is inapposite because Mot. Exs. 14-16 are not Forms 4 themselves, but rather attorney-generated charts.  Mot. Ex. 11, a chart compiling lapse rate data "published on Globe Life's website," should not be accepted as true either.  Reply at 2-3.  Defendants' sole case states that "the Court is not persuaded that it may take judicial notice of this website for the truth of the matter asserted." *In re Lumen Techs., Inc. Sec.*

4918-5135-3644

**B.       Multiple Reliable Sources Corroborate the Fuzzy Panda Report**

Courts routinely accept pleading-stage allegations drawn from a short seller's research report when, as here, the plaintiffs have conducted an independent investigation and alleged "corroborating facts" confirming the short seller's allegations.  Opp. at 10.  Defendants do not contest that.  *See* Reply at 4-5 n.5.  Instead, Defendants now assert that the Fuzzy Panda Report is unreliable because it relies on certain "anonymous sources," "without any independent corroboration."  *Id.* at 3-5.  But this argument is legally and factually incorrect.

"'The majority of courts [hold] that a short-seller report . . . does not implicate the same skepticism as a traditional anonymous source.'"  *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *5 (S.D.N.Y. Feb. 17, 2022) (quoting *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 123-24 (S.D.N.Y. 2013)).  A short seller report may be "deemed credible by the market as reflected in the significant drop in [the company's] share price on the day the report was published as well as the next trading day."  *Id.*  Here, the Fuzzy Panda Report caused an immediate *53%* price decline, confirming its credibility.  ¶¶365-368.

And neither Fuzzy Panda nor its sources are as "anonymous" as Defendants contend.  Reply at 3.  Fuzzy Panda is an established short seller research firm with a known track record of publishing reliable reports.  ¶8 n.1.  Courts routinely credit such reports at the pleading stage.  *See, e.g.*, *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *22 (C.D. Cal. Mar. 5, 2021) (crediting short seller findings where "the articles at issue were not anonymously posted on a website such as *Seeking Alpha*" but instead "were authored by two named [short seller] firms").  That some, but not all, of the "sources cited in [the Fuzzy Panda R]eport" are "anonymous" does not itself determine the report's reliability.  *See Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinox, Inc.*, 2025 WL 39936, at *4 (N.D. Cal. Jan. 6, 2025) ("[A] securities fraud complaint is not automatically

_____

*Litig.*, 2024 WL 4637293, at *23 (W.D. La. Sept. 30, 2024).  And the website at issue in *Lumen* was a non-party website, not the defendant's, as Defendants represent.  Reply at 3.

- 3 -

4918-5135-3644

doomed just because it relies primarily or exclusively on a short-seller report quoting anonymous sources. It depends on the amount of detail and specificity, the corroborative nature of the allegations, the plausibility of those allegations given the context, the number of sources quoted, and other factors."). Here, many of Fuzzy Panda's sources are named, allowing Plaintiffs to corroborate those sources independently. For example:

- The Dehning Affidavit (¶¶6-8, 69, 113-114; Compl. Ex. A) corroborates Fuzzy Panda's accounts of Scott Dehning's reports of fraud to AIL's CEO and President (Compl. Ex. B at 7-8, 13, 20, 26).

- Former AIL agent Michael Russin agreed to testify to certain facts as documented in the Zinsky-Russin Stipulation. That stipulation confirms AIL's "unethical and/or fraudulent sales practices" (¶¶9, 73, 139-141, 156; Compl. Ex. C) and corroborates Fuzzy Panda's accounts of misconduct by Russin and other agents (Compl. Ex. B at 33-35).

- A lawsuit by Renee Zinsky details widespread illegal conduct within AIL's Arias agency (¶¶132-138), corroborating Fuzzy Panda's similar accounts based on text messages from Russin to Zinsky (Compl. Ex. B at 35).

- The EEOC's determination letters (¶¶12-15, 125, 166-175; Compl. Ex. D) corroborate Fuzzy Panda's reports that Globe Life, AIL, and the Arias Organization created and condoned a "hostile workplace" and "culture of sexual harassment" (Compl. Ex. B at 3-4, 9, 16, 25, 29-35, 48).

- Enforcement actions by the state insurance departments (many obtained via FOIA, ¶2) in California (¶301), Michigan (¶302), Pennsylvania (¶¶308-309), South Carolina (¶302), Texas (¶307), and Washington (¶341) corroborate Fuzzy Panda's accounts of illegal sales practices (¶¶147-164; Compl. Ex. B at 2, 22, 48).

- The DOJ's and SEC's investigations (¶¶17, 21, 144, 146, 342-343, 345) corroborate Fuzzy Panda's accounts of the DOJ's investigation (Compl. Ex. B at 2, 4, 35-37).

- Hundreds of consumer complaints to the BBB (¶¶324-333) and FTC (¶¶334-339) corroborate Fuzzy Panda's descriptions of AIL's unethical and dishonest treatment of customers (Compl. Ex. B at 1, 14-16, 43).

### C.    The Complaint Raises a Strong Inference of Scienter as to All Defendants

Defendants argue that Plaintiffs ignore "the requirement to 'allege specific facts about the defendant speaker's state of mind when each challenged statement was made.'" Reply at 5 (quoting *Edgar v. Anadarko Petrol. Corp.*, 2019 WL 1167786, at *7 (S.D. Tex. Mar. 13, 2019), *aff'd sub nom. Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Phila. & Vicinity v.*

- 4 -

*Anadarko Petrol. Corp.*, 788 F. App'x 268 (5th Cir. 2019)).  To the contrary, Plaintiffs plead numerous facts supporting the inference that Defendants made each challenged statement with a culpable state of mind – including facts gleaned from the testimony of Company insiders, consumer complaints, and the Fuzzy Panda Report, in addition to the Individual Defendants' compensation and suspicious stock sales.  *See* Opp. at 25-34.  Nothing more is required, as scienter allegations must be viewed "holistically," not "scrutinize[d] . . . in isolation."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007).  Despite this clear precedent, Defendants argue that each scienter allegation is insufficient **on its own** to raise a strong inference as to all Defendants.  But when viewed holistically for each defendant, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

**Steven K. Greer and Joel P. Scarborough**.  These defendants are named in Count II for having participated in the alleged scheme, which included concealing that AIL generated sales and revenues through fraudulent business practices.  Plaintiffs explicitly plead Greer's and Scarborough's knowledge of such practices, which readily establishes their scienter as to the entire scheme.  *See* Opp. at 29; *see also* §II.F.  Plaintiffs have in no way "conceded" that the Complaint fails to raise an inference of scienter as to these defendants.  Reply at 6.[4]

**Testimony from Company Insiders**.  Defendants downplay the testimony of former AIL VP Dehning as "a lone affidavit from an unrelated case," Reply at 6, but they sidestep the content of that testimony, including their own egregious refusal to investigate Dehning's reports of misconduct. Defendants' attempt to distinguish *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573 (W.D. Tex. 2022), on its facts is unavailing because its holding still applies:  "An egregious refusal to

---

[4]      *Satanic Temple Inc. v. Young*, 681 F. Supp. 3d 685, 693 (S.D. Tex. 2023), involves forfeiture of an entire ***claim*** for failing to address the arguments.  It does not hold that a plaintiff must respond specifically to each and every point made by a defendant.

- 5 -

4918-5135-3644

investigate may give rise to an inference of recklessness." *Id.* at 584.  Dehning's testimony thus supports an inference of scienter.

The Zinsky-Russin Stipulation is likewise illustrative of "'a regular pattern of related and repeated conduct,'" further supporting scienter.  Opp. at 26 (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 693 (S.D. Tex. 2002)).  Defendants ignore this and instead complain, without authority, that the stipulation did not include certain other details.  *See* Reply at 7.  They also wrongly assert that the stipulation "does not explain the basis" for Russin's knowledge of AIL's awareness of alleged sexual harassment.  *Id.*  But the stipulation specifically states that AIL leadership, including Greer, "frequently visited the office that Russin worked out of, participated in calls and meetings, and attended other offsite work events."  ¶140.

Finally, Defendants assert that allegations from other lawsuits may be relied on only if they "result[ed] in liability," Reply at 7, but the case they cite is inapposite.  In *Teamsters Loc. 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413 (E.D. Pa. 2019), the court rejected the plaintiffs' argument that the defendants "must have known about" lawsuits alleging underlying misconduct.  *Id.* at 467.  Here, Plaintiffs do not allege that Defendants "must have known" about the allegations in the *Dehning* and *Zinsky* lawsuits.  Rather, details obtained *from* those lawsuits directly establish Defendants' knowledge of the underlying misconduct.  *See* Opp. at 25-26.

***Consumer Complaints***.  The mountain of consumer complaints, the Company's admission to monitoring customer feedback, and AIL's responses to complaints also provide support for a strong inference of scienter.  *See id.* at 27-28.  Unable to refute this point, Defendants chide Plaintiffs for not citing confidential witnesses.  *See* Reply at 7-8.  But Plaintiffs do not need witnesses to confirm Defendants' knowledge, as the Company itself admitted to tracking and responding to customer

- 6 -

4918-5135-3644

feedback and complaints.  *See* Opp. at 27-28.[5]  In addition, defendant James Matthew Darden admitted that the Company "[took] seriously *any* allegations brought to our attention concerning . . . unethical business practices" and had "processes in place."  ¶194.  This admission was not limited to the *Zinsky* litigation, as Defendants argue.  *See* Reply at 8.[6]

**Fuzzy Panda**.  The bombshell allegations from Fuzzy Panda also support a strong inference of scienter.  **First**, Defendants' arguments about "anonymous" sources fail.  *See* §II.B., *supra*. **Second**, in arguing that the allegations concerning Dehning's over 200 emails to executives lack sufficient detail to infer scienter, Reply at 8, Defendants overlook that Plaintiffs allege the emails "detail[ed] rampant fraud at AIL" (¶114), "detail[ed] cases of fraud" (¶8), and were sent to defendants Greer and Scarborough (¶¶8, 114, 147).  The Fuzzy Panda Report also discloses an email, dated September 10, 2021.  *See* Compl. Ex. B at 7-8.  Defendants ask for more – essentially claiming Plaintiffs must plead evidence.  *See* Reply at 8 (citing Mot. at 28).  But as the Fifth Circuit has made clear, "'[e]ven with the heightened pleading standard under Rule 9(b) and the Securities Reform Act [the court does] not require the pleading of detailed evidentiary matter in securities litigation.'"  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 356 (5th Cir. 2002).

**Third**, contrary to Defendants' argument, Reply at 8-9, allegations establishing the widespread nature of the fraudulent conduct and hostile work environment permit a reasonable inference of scienter as to every individual defendant.  *See, e.g.*, *Bucks Cnty. Emps. Ret. Sys. v. Norfolk S. Corp.*, 2025 WL 897540, at *10 (N.D. Ga. Mar. 24, 2025) ("[T]he sheer scale of

---

[5]    *See, e.g.*, *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *11 (D.N.J. Apr. 28, 2017) ("[T]he mere lack of citations to confidential informants . . . does not preclude the Court from finding sufficient allegations of scienter based on its holistic review of the Complaint.").

[6]    The fact that the defendants in *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012), received notice of impropriety in a different manner than Defendants did here is of no consequence.  *See* Reply at 8.  And *Pang v. Levitt*, 2023 WL 11643704 (W.D. Tex. Dec. 20, 2023), is inapposite because here admissions from the Company and Darden support scienter.

4918-5135-3644

Plaintiffs' allegations gives rise to an inference of senior management participation."). Finally, Defendants' argument that the hostile work environment lawsuits "have not resulted in an adverse finding against Globe Life," Reply at 9, is irrelevant to the analysis. *See* Opp. at 26-27 n.14.

***Executive Compensation***. The Opposition provides more than just "a recitation of the Complaint's allegations," Reply at 9, as it points to defendants Gary L. Coleman's and Larry M. Hutchison's performance-based bonuses amounting to 140% of their base salaries, similar to the 175% bonus that provided a concrete motive in *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261 (5th Cir. 2005), *modified*, 409 F.3d 653 (5th Cir. 2005). *See* Opp. at 30. Defendants fail to explain why the extra 35% is determinative. *See* Mot. at 31; Reply at 9. And contrary to Defendants' argument, Reply at 9, Plaintiffs ***do*** provide the metrics for the share awards and explain how AIL's performance impacted bonuses. ¶¶271-274 (alleging "three key metrics" and explaining AIL's importance to share awards and bonuses); Mot. at 31 (admitting that "the Complaint does allege the metrics that determined the [share] awards").

***Stock Sales***. Defendants' assertions that Plaintiffs concede "all of Defendants' stock sale arguments" and "that the trading patterns are not suspicious" are divorced from reality. Reply at 10. The Class Period trading of seven of the Individual Defendants further enhances the inference of scienter because it was "'out of line with prior trading practices'" and "'at times calculated to maximize personal profit.'" *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 960 (5th Cir. 2016). Plaintiffs do not "simply aggregate[]" sales from the Class and Control Periods. Reply at 10.[7] They plead the number of shares sold and proceeds for each individual defendant in both periods, showing that each one profited materially more from their

---

[7]     Neither *Asar*, 768 F. App'x 175, nor *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570 (N.D. Tex. 2021), discuss aggregating insider sales to show their suspicious nature. *See* Reply at 10. Moreover, in *Crutchfield*, unlike here, the plaintiffs failed to allege the defendants' prior trading history. 529 F. Supp. 3d at 601.

- 8 -

4918-5135-3644

Class Period trading than in the prior five years – facts that Defendants wholly ignore.  ¶¶277-284.

Most notably, Coleman and Hutchison each sold 525,000 shares of Globe Life stock for $51.8 million and $51.6 million, respectively, during the Class Period.  Those sales were entirely out of line with their prior trading practices, as *each of them reaped $18-$19 million more during the Class Period than in the Control Period*.  ¶¶277-278.  Defendants' argument that Coleman and Hutchison sold lower percentages of their holdings during the Class Period than in the Control Period is misleading.  Reply at 10; Mot. Exs. 14-15.  The percentages in Mot. Exs. 14-15, ranging from .1% to 8.6%, are highly misleading because they are *per trade*, while the actual percentages of *total* holdings sold by Coleman and Hutchison during the Class Period are significantly higher.[8]

Defendant Frank M. Svoboda sold 285,000 shares of his stock during the Class Period, which was over 110,000 shares more than during the Control Period.  Those Class Period sales netted Svoboda $29 million, or *more than double* his Control Period proceeds of $12.2 million.  ¶279.  Defendants' argument that defendants R. Brian Mitchell and M. Shane Henrie sold more shares during the Control Period similarly falls flat, Reply at 10, as these defendants profited by millions of dollars *more* during the Class Period because they sold at much higher, artificially inflated prices.  ¶¶280, 283.  And in contrast to having made *no* sales during the Control Period, Greer sold 43,226 shares of his Globe Life stock for $4.7 million during the Class Period.  ¶282.[9]  That Coleman, Hutchison, Svoboda, Henrie, Mitchell, and Greer sold in suspicious amounts during the Class Period, while Globe Life's stock prices were artificially inflated because of Defendants' false

---

[8]    *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546 (5th Cir. 2007), on which Defendants rely, Mot. at 33, is distinguishable because there the defendant sold only 4% of his stock.  497 F.3d at 553.

[9]    Defendants do not show that defendants Thomas P. Kalmbach's and Jennifer A. Haworth's Class Period sales were in line with their Control Period sales.

statements and fraudulent scheme, is probative of scienter.  *See, e.g.*, *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 722 (W.D. Tex. 2010).

***The Core Operations Doctrine***.   The Fifth Circuit has expressly rejected Defendants' argument that in applying the core operations theory, a "'critical transaction'" must be a "'single' product or asset that jeopardizes a company's very existence."  Reply at 11; *see Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 219 (5th Cir. 2023) (applying core operations theory where the theme parks comprised "just '3% of Six Flags' revenue" and "were not critical to Six Flags' survival" but were "an important aspect of future growth prospects and EBITDA" and touted "as a 'key growth driver'").  Here, AIL is "the largest contributor to Globe Life's success," generating over 50% of the Company's reported life premium revenue and contracting two-thirds of its producing agents.  Compl. §IV.A.2.; ¶¶52-54, 196.[10]  Moreover, Defendants consistently attributed Globe Life's growth in Life Net Sales and Life Premiums to AIL in the Company's annual reports.  ¶¶54, 201, 208, 219.[11]  Darden, Svoboda, Henrie, Kalmbach, Scarborough, and Mitchell were officers of AIL for years.  ¶50.  These facts create the inference that the "misrepresented or omitted information" was sufficiently important to "'have been readily apparent'" to the Individual Defendants.  *Six Flags*, 58 F.4th at 219.[12]

---

[10]     Defendants' reference to *Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017), to argue that a "'critical transaction'" must involve a "'single' product or asset" is a glaring mis-cite.  Reply at 11.  The quotation of "single" is from a **parenthetical** in *Neiman* discussing *Owens v. Jastrow*, 789 F.3d 529, 540 (5th Cir. 2015), which distinguished a case in which the company was a single product company.  *Neiman* did not hold that a critical transaction must involve a single product or asset (nor did *Owens*).

[11]     Defendants also illustrated that they had intimate knowledge of AIL's operations, such as its commissions structure, virtual sales, and policies, distinguishing this case from *Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 699 (S.D. Tex. 2013).  *See, e.g.*, ¶¶87-89, 94, 99, 193-194, 198, 203, 205, 208, 215, 219.

[12]     None of the four "special circumstances" of the core operations theory are dispositive, so Globe Life's size alone does not preclude its application.  *Carlton v. Cannon*, 184 F. Supp. 3d 428, 484 (S.D. Tex. 2016), *amended*, 2016 WL 3959164 (S.D. Tex. July 22, 2016).  In fact, the Fifth

- 10 -

***Government Investigations***.  Defendants argue that the DOJ, SEC, and EEOC investigations "are irrelevant to scienter because they did not occur until the very end of the Class Period or after the Class Period ended."  Reply at 11.  Not so.  The DOJ subpoena for "documents related to sales practices" was served in November 2023, over four months before the end of the Class Period, and Defendants did not disclose it until March 14, 2024.  ¶¶144, 146, 343.  Its timing and concealment are probative of scienter.  Defendants further misrepresent that "[t]he Opposition offers no response to this [timing] point."  Reply at 11; *see* Opp. at 33; *see also* Opp. at 33 n.17 (citing *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) (investigations commenced **after** the Class Period provide additional support for scienter).[13]  In any event, the conduct giving rise to the investigations persisted for years and the Complaint demonstrates Defendants' knowledge of the malfeasance in question.  *See, e.g.*, ¶8 (AIL VP Dehning reported fraud to a state authority in 2021 and sent "more than 200 emails detailing cases of fraud" to Greer and Scarborough); ¶145 (Darden admitted in early 2024 that the Company was aware of sexual harassment allegations); ¶310 (Mitchell and Scarborough signed a 2023 consent decree acknowledging AIL's violations of unfair methods of competition and deceptive practices throughout 2021-2022); *see also* Opp. at 33 n.17.  The Complaint thus does precisely what Defendants claim it should – it "'link[s] the specific defendants' to knowledge of the matters underlying the [governmental] inquiries."  Reply at 11.

***Stock Buybacks***.  Defendants' claim that the buyback was justified because Globe Life "believed the stock was undervalued" raises a factual dispute that cannot be addressed at the

---

Circuit applied the doctrine in *Six Flags* to a company with over 42,000 seasonal and full-time employees.  58 F.4th at 219.  As such, Globe Life's size is not controlling as Defendants argue.  *See* Reply at 10.

[13]    Defendants cite to their previous discussion of this point.  Reply at 11 (citing Mot. at 36).  But their reliance there on *Konkol v. Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009), is misplaced, as the Sixth Circuit has since declined to follow the *Konkol* approach of "sorting through each allegation individually," finding scienter allegations that included an SEC investigation sufficient under the holistic approach.  *See Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011).

4918-5135-3644

pleading stage.  *Id.* at 12.  Moreover, Defendants' non-culpable explanation for the buyback is not more compelling than Plaintiffs' allegation that it was done to prop up the stock price.  *See Hall v. Rent-A-Center, Inc.*, 2017 WL 6379334, at *9 n.7 (E.D. Tex. Dec. 14, 2017) (Mazzant, J.) ("'[W]here there are competing inferences that establish or negate the scienter requirement, "a tie favors the plaintiff" on a motion to dismiss . . . .'").  Defendants' attempt to distinguish *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008), is unavailing, as there, like here, "the repurchase program could properly be viewed as an attempt to . . . propel the Company forward (steadying the stock price, or sending it upward)."  *Id.* at 1068.

**SOX Certifications**.  Defendants incorrectly claim the Complaint did not raise a "theory" of scienter based on SOX certifications.  Reply at 12.  The Complaint alleges that despite various "red flag[s]" (*see, e.g.*, ¶¶195, 197, 221, 248) evidencing Globe Life's "ineffective, destructive, and pervasively lacking" control environment, Coleman, Darden, Hutchison, Kalmbach, and Svoboda nevertheless attested to the effectiveness of the control environment (¶¶254-256) and the accuracy of Globe Life's public filings in their SOX certifications (¶¶249-251).  This further supports an inference of scienter.  *See ArthroCare*, 726 F. Supp. 2d at 724, 736 ("A red flag creating a strong inference of scienter generally consists of '[a]n egregious refusal to see the obvious, or to investigate the doubtful.'").

**D.      The Complaint Adequately Alleges False and Misleading Statements and Omissions**

Defendants incorrectly assert that "[t]he Opposition concedes multiple reasons to dismiss each category of challenged statements."  Reply at 12.  Plaintiffs have conceded nothing, and the Complaint satisfies Fifth Circuit law on pleading false and misleading statements and omissions.

**Business Culture Statements**.  These statements are not "immaterial as a matter of law."  *Id.* Courts in the Fifth Circuit, as elsewhere, routinely uphold statements in codes of conduct/ethics when, as here, they contain more than vague statements of optimism or aspirations.  *See* Opp. at 13-

- 12 -

4918-5135-3644

14.[14]    Defendants argue that "Plaintiffs do not cite any examples of concrete, verifiable representations in the statements," Reply at 13, but it is hard to imagine more "concrete" and "verifiable" statements than "*[v]iolence and threatening behavior are not permitted*" and "*Globe Life prohibits and will not tolerate any such discrimination or harassment*." ¶¶180-182.   And determining as a matter of law what investors would consider material is rarely appropriate on a motion to dismiss.  *See* Opp. at 10-11.[15]

    **Financial Results Statements**.  Defendants argue that Plaintiffs must allege "what the 'true' financial results were, and therefore how the reported results were false" to plead falsity.  *See* Reply at 14-15.  That is not the law, and courts have rejected this argument in similar cases.  For instance, in *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y. 2013), the plaintiffs alleged the defendant misrepresented that it was growing revenues and margins when part of its revenues actually came from Medicare fraud.  *Id.* at 367-68.  Observing the complaint did not allege any type of "numerical manipulation" like accounting fraud, the court found that the failure to "specify the exact percentage of the revenue and profits that . . . was earned solely as a result of alleged Medicare fraud [was] not of importance."  *Id.* at 368.  The court concluded that "due to the nature of the allegations, . . . with respect to the reported financial results, the Plaintiff has sufficiently pleaded with particularity the material misstatements or omissions by the Defendants."  *Id.*  Similarly here, Plaintiffs allege that Defendants failed to disclose that a material portion of Globe Life's reported revenues were derived from fraud, which is enough to plead falsity.  *Id.*

---

[14]    Defendants ignore this case law other than to assert that it is "not the rule in the Fifth Circuit."  Reply at 14.  But the sole case on which they rely, *In re Tesla Inc. S'holder Derivative Litig.*, 2023 WL 6060349 (W.D. Tex. Sept. 15, 2023), is inapposite.  There, the claims were premised on plaintiffs' disagreement regarding the board's business judgment.  *Id.* at *6.

[15]    Even if the Court were to conclude that *portions* of the statements "may be vague and upbeat . . . that is not enough to get the alleged statement (much less any claim in the complaint) thrown out."  *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at *10 (N.D. Ill. Aug. 11, 2021).

- 13 -

Nor does *Markman v. Whole Foods Mkt., Inc.*, 2016 WL 10567194 (W.D. Tex. Aug. 19, 2016), suggest a contrary conclusion. *See* Reply at 14. There, the court did not hold that the plaintiff had to "explain what results would have been without overcharging," *id.*, but instead concluded that the plaintiff had failed to articulate its theory with particularity. *Whole Foods*, 2016 WL 10567194, at *9. By contrast, Plaintiffs allege specific facts showing that Defendants' statements attributing AIL's sales growth to legitimate sources were false and misleading because the growth was inflated by fraudulent, deceptive sales and transactions. *See, e.g.*, ¶197 (from 2019-2023, 16 or more AIL agencies that engaged in fraudulent business practices grew ALP at 16%, while ALP declined by 0.5% per year at agencies that did not engage in such practices); ¶221(a) ($200 million of AIL's new ALP, which accounted for over 60% of the new ALP, came from agencies engaged in fraud).[16] Moreover, by "'engag[ing] in public discussions'" expressly attributing the Company's growth to virtual selling and recruiting, higher agent retention and agent counts, and the skill, quality, and hard work of AIL's agents, Defendants undertook "'a duty to disclose a "mix of information" that is not misleading.'" *Six Flags*, 58 F.4th at 217.

Defendants' argument that Plaintiffs' theory is not plausible because there have been no write-offs or restatements also fails. *See* Reply at 15-16. Neither is required to plead false financial statements, Opp. at 19 n.7, and Defendants offer no case law holding otherwise.[17] It is entirely

[16]   Defendants continue to resist the correlation drawn in the Complaint between Globe Life's internal metric representing the annual premiums on life insurance policies, ALP, and its publicly reported Life Premium and Life Net Sales, which respectively represent the premium revenue recorded during a reporting period and the annualized gross premium received during a policy's first year (net of cancellations in the first 30 days). ¶¶76 n.2, 83. Plaintiffs explained the correlation in their Opposition. Opp. at 16 n.4. Defendants' empty assertion that this further clarification was "new" and "not enough" is unfounded – particularly as Defendants themselves know the precise meaning of these metrics. And contrary to Defendants' further argument, the Complaint alleges ALP increases generated through unlawful means between 2019 and 2023. *See* ¶¶80, 197.

[17]   The Reply's vague reference to *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871 (W.D.N.C. 2001), and *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571 (E.D. Va. 2006), as dismissing "statements about reported financial results" is unavailing.

- 14 -

plausible that "agents were able to create scores of fictitious policies that went unnoticed *for years*" (¶¶115, 309), and when customers tried to cancel unauthorized policies, the Company thwarted their efforts and often refused to cancel *for years*.  ¶¶330, 341.  The Complaint further alleges that Globe Life and AIL operated as a pyramid scheme, the very purpose of which is to perpetrate its fraud unnoticed as long as possible.  *See generally Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 639 (5th Cir. 2016) ("[B]y design, a pyramid scheme's fraud inheres in its concealment of the deceptive nature of the 'robbing Peter to pay Paul' payment structure.").

**Privacy Statements**.[18]  Defendants continue to ignore that the allegations from Fuzzy Panda and court filings are echoed in numerous consumer complaints to the BBB, FTC, and state insurance departments, which support the widespread nature of the misuse of customer data.  ¶¶323, 326, 335. Reports that agencies were breaching privacy laws throughout the Class Period came from multiple sources and Defendants knew the misconduct was prevalent.  *See* Opp. at 19-20, 27-28.  Defendants' warnings that non-compliance with privacy laws was a hypothetical risk while knowing that that risk already had materialized renders those statements actionably false.  Opp. at 20.

**Recruitment and Retention Statements**.  Defendants repeatedly disclosed Globe Life's quarterly average producing agent count in SEC filings and discussed the importance of recruiting and retaining agents.  *See id.* at 20-22.  The Complaint makes clear that by concealing the true drivers of agent growth count – including recruiting fraud and "an undisclosed pyramid-like MLM

---

Reply at 16.  Both of those cases addressed alleged GAAP violations, which are not pleaded or required here, and neither case concluded the allegations were implausible.  *See First Union*, 128 F. Supp. 2d at 895; *Iron Workers*, 432 F. Supp. 2d at 587.

[18]    Plaintiffs have not conceded anything about the 2019 ESG report statement.  *See* Reply at 16 n.10.  The Opposition does not address that statement specifically because the Motion made no argument about it other than what was purportedly "already explained."  Mot. at 23.

- 15 -

scheme" – those statements were false.[19]  ¶¶78, 248(a), 251.  Plaintiffs need not "allege what the 'true' agent recruitment numbers were," Reply at 17, as "even under the heightened standards of Rule 9(b) and the Reform Act these are the sorts of details that could only be obtained after a reasonable opportunity for discovery."  *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1320 (N.D. Ga. 2001); *see also Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 106-07 (D. Mass. 2014) ("[W]hile it is true that the Plaintiffs cannot allege by exactly how much the revenues were inflated, this ought not prevent them from surviving the motion to dismiss.").[20]

**SOX Statements**.  As before, Defendants argue that Plaintiffs fail to plead falsity as to the SOX certifications because they do not allege "the 'true' financial results or the certifying Defendants' knowledge."  Reply at 18.  The former argument fails for the reasons above.  *See supra* at 12-15.  The latter fails because Plaintiffs adequately plead scienter.  *See* Opp. at 24-34; *supra* at 4-12.

Defendants also argue that the "Management's Report on Internal Control over Financial Reporting" statements are not actionable.  *See* Reply at 18.  But Defendants concede that Globe Life acknowledged using the Integrated Framework issued by COSO to assess the Company's internal controls over financial reporting, which provides that "'internal control is ***not*** solely about accounting and financial matters.'"  Opp. at 23 (quoting ¶252).  This was not the case in *Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661 (N.D. Tex. 2023), on which Defendants rely.  And

---

[19]   Specific information about sources is not "missing from the Complaint."  Reply at 17.  For example, Dehning filed an affidavit in which he testified that "AIL's business model [is] based on a pyramid scheme," which "resulted in 'recruiting fraud,' whereby agents falsified agent contracts to collect the recruitment bonus."  ¶¶69, 70, 147, 248(c).

[20]   Defendants' reliance on *Crutchfield* does not help them.  There, the defendant reported in public filings "that there was and remained a risk of 'offensive,' 'unlawful,' or other '[i]nappropriate actions' by [its] users and that [its] 'safeguards may not be sufficient to avoid harm' to its brands or business."  529 F. Supp. 3d at 592.  Defendants do not argue that Globe Life provided similar warnings.

Defendants ignore the SEC's 2007 guidance that speaks to "the role of *entity-level controls in assessing financial reporting risks* and the adequacy of controls," and that "entity-level controls" include "*management's philosophy and operating style, integrity and ethical values*." *Commission Guidance Regarding Management's Report on Internal Control over Financial Reporting*, SEC Release No. 8810, Securities Act Release No. 33-8810, Exchange Act Release No. 34-55929, 2007 WL 1791162 (June 20, 2007).  Because the allegations encompass "management's philosophy and operating style, integrity and ethical values," Defendants' argument fails.  *See* ¶253.[21]

### E.    The Complaint Adequately Alleges Loss Causation

Defendants now agree that "the March 13, 2024 announcement of Globe Life's cooperation with DOJ subpoenas" can be an adequate corrective disclosure if it does not "stand[] alone."  Reply at 18.  But, relying solely on one out-of-circuit case, Defendants again incorrectly claim that the Fuzzy Panda Report is not a corrective disclosure simply because it is a short seller report.  *Id.* at 19. There is no such rule, and in the Fifth Circuit, "'there is no requirement that a corrective disclosure take a particular form or be of a particular quality.'"  *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 325 (5th Cir. 2014).  In *Amedisys*, the Fifth Circuit considered allegations based, in part, on a short seller report and the later commencement of a DOJ investigation.  *Id*. at 322.[22] The court held that the "totality" of the loss causation allegations was sufficient to withstand a Rule 12(b)(6) motion.  *Amedisys*, 769 F.3d at 324.  Numerous other courts have similarly found that short seller reports can serve as corrective disclosures.  *See, e.g.*, *Schneider v. Natera, Inc.*, 2023 WL 9958265, at \*9-\*10 (W.D. Tex. Sept. 11, 2023); *Behrendsen v. Yangtze River Port & Logistics Ltd.*,

---

[21]    Courts give weight to SEC guidance.  *See Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 68 (S.D.N.Y. 2023).

[22]    In *Amedisys*, the first alleged partial disclosure was "an online report published by Citron Research."  769 F.3d at 318, 325.  Citron Research is a well-known activist short seller.  *See, e.g.*, *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1178 n.3 (9th Cir. 2024)*.*

4918-5135-3644

2021 WL 2646353, at *15 (E.D.N.Y. June 28, 2021); *Bush v. Blink Charging Co.*, 2023 WL 8263037, at *2, *10 (S.D. Fla. Nov. 27, 2023); *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 731, 742 (N.D. Cal. 2022).  Defendants also ignore the Ninth Circuit's recent holding post *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020), that a short seller report can serve as a corrective disclosure.  *See Genius Brands*, 97 F.4th at 1178, 1187.[23]

### F.    The Complaint Plausibly Alleges a Scheme Claim

The Complaint alleges a fraudulent scheme involving various deceptive acts and courses of conduct, including making misrepresentations, concealing ongoing fraudulent sales practices, supporting and concealing a culture that promoted such misconduct, and carrying on a pyramid-like MLM business model that rewarded recruiting over selling.  *See, e.g.*, ¶392 (scheme included "the knowing or reckless cover-up, suppression, and concealment of, among other things, the fact that sales growth in [AIL] was achieved through deceptive and unsustainable business practices," "the deceptive acts . . . and course of business").  Defendants artificially restrict the scope of the scheme to their concealment of a pyramid-like MLM structure and a culture that ignored fraud and rewarded recruitment, Reply at 19, and thereby fail to address the entire scheme in their Motion.

Defendants also wrongly insist that Plaintiffs must allege deceptive conduct "beyond" Rule 10b-5(b) misrepresentations and omissions to plead scheme liability under subsections (a) and (c).  *Id.* at 20.  In *Lorenzo v. SEC*, 587 U.S. 71 (2019), which Defendants continue to ignore, the Court rejected the argument that Rule 10b-5(a), (b), and (c) "should be read as governing different,

---

[23]    Defendants erroneously argue that it is "entirely irrelevant" that the alleged disclosures in *BofI* were based on public information, unlike the Fuzzy Panda Report.  Reply at 19 n.12.  This distinction is critical because, as the Ninth Circuit held, that the blog posts were "derived from publicly available sources . . . makes it more difficult for the shareholders to rely on the posts as corrective disclosures."  *BofI*, 977 F.3d at 794.  Had the blog posts contained facts derived from interviews with insiders and an executive whistleblower, as Fuzzy Panda does, the result there may have been different.  *See id.* at 792-94 (upholding allegations that a whistleblower lawsuit served as a corrective disclosure).

- 18 -

4918-5135-3644

mutually exclusive, spheres of conduct," stating that "***this Court [has] long recognized considerable overlap among the subsections of the Rule***." *Id.* at 80. Defendants' failure to address *Lorenzo* is telling. In the five years since it was decided, courts have widely held that a plaintiff need not plead deceptive conduct beyond misrepresentations to state a scheme claim, and that making misrepresentations in violation of Rule 10b-5(b) is deceptive conduct that is also actionable as part of a scheme under subsections (a) and (c). *See, e.g.*, *SEC v. Carter*, 2020 WL 6304889, at *5-*6 (E.D. Tex. Oct. 28, 2020) (making false statements violated Rule 10b-5(a)-(c)); *SEC v. SeeThruEquity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (noting *Lorenzo* "foreclose[d]" the argument that a plaintiff must "allege a deceptive act that is distinct from misstatements" to plead scheme liability); *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *17 (D.N.J. June 5, 2020) ("[U]nder *Lorenzo*, unlike prior precedent, ***a plaintiff need not necessarily allege deceptive conduct that extends beyond the alleged misstatement itself***.").[24] Defendants' misrepresentations are thus deceptive acts that support scheme liability.[25]

The sole case upon which Defendants rely, *Yoshikawa v. Exxon Mobil Corp.*, 2023 WL 5489054 (N.D. Tex. Aug. 24, 2023), favors Plaintiffs. The *Exxon* court did not hold that a plaintiff ***must*** allege conduct beyond misrepresentations, Reply at 20, but that the plaintiff there, like here, ***did*** allege additional deceptive conduct. 2023 WL 5489054, at *9. Here, the additional deceptive conduct includes the concealment of fraudulent sales growth and a culture that ignored it, AIL's pyramid-like business model, and other deceptive conduct by non-speaking defendants. ¶¶388, 392;

---

[24]    *See also SEC v. Kameli*, 2020 WL 2542154, at *15 (N.D. Ill. May 19, 2020) (rejecting "defendants' contention that claims under Rule 10b-5(a) and (c) cannot be predicated on the same conduct as that supporting claims under Rule 10b-5(b)"); *SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1339-40 (S.D. Fla. 2021) (same).

[25]    Plaintiffs do not "disclaim[] reliance" on Defendants' misstatements in their scheme claim. Reply at 20 (citing ¶389). Rather, Plaintiffs allege that they need not plead or prove the misrepresentations for all Defendants to have scheme liability because other facts support it. ¶390.

4918-5135-3644

Opp. at 35-36; *see also SeeThruEquity*, 2019 WL 1998027, at \*5 (scheme liability adequately pled where it was alleged "that the defendants' entire business model, beyond any misstatements or omissions, [was] deceptive").  The *Exxon* court later found that deceptive internal conduct was communicated to the public because it "was the basis for public misstatements and omissions." *Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at \*3-\*4 (N.D. Tex. Aug. 12, 2024).  The same is true here.

Finally, Defendants' argument that scheme claims fail against Greer, Scarborough, Mitchell, and Henrie because their conduct involved sales practices must be rejected because it rests on Defendants' incomplete description of the scheme as restricted to "concealment of the MLM/recruitment 'scheme.'"  Reply at 19-20.

## III.    CONCLUSION

Defendants' Motion should be denied in its entirety.

DATED:  March 28, 2025          Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
LAURA ANDRACCHIO (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
ASHLEY M. KELLY (admitted *pro hac vice*)
MEGAN M. SONNEY (admitted *pro hac vice*)

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
landracchio@rgrdlaw.com
bhenssler@rgrdlaw.com
ashleyk@rgrdlaw.com
msonney@rgrdlaw.com

4918-5135-3644

MOTLEY RICE LLC
GREGG S. LEVIN
WILLIAM S. NORTON (admitted *pro hac vice*)
JOSHUA C. LITTLEJOHN
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 21 -

4918-5135-3644